**Wendell COOKS, Appellant,**

v.

**CITY OF GLADEWATER (Self–Insured), Appellee.**

**No. 12–89–00115–CV.**

Court of Appeals of Texas, Tyler.

April 30, 1991.

John D. Sloan, Longview, for appellant.

Mike Ace, Tyler, for appellee.

COLLEY, Justice.

This is a workers' compensation case involving venue determination.

Appellant Wendell Cooks brings this appeal from a judgment awarding him benefits under the old Workers' Compensation Act[1] for temporary partial incapacity and medical care over and against appellee, City of Gladewater, a self-insurer under the act.

Appellant initially filed this suit under Cause No. 413–87 in the 115th Judicial District Court of Upshur County. Appellee, City of Gladewater, filed a motion to transfer venue to a district court in Gregg County where the appellant's injury occurred. The Upshur County District Court sustained appellee's motion and transferred the cause to Gregg County.

Appellant presents two points of error. First, he claims that the court erred in overruling his motion for new trial because the jury's failure to find that his on-the-job injury, sustained on August 12, 1986, was "a producing cause of any period of total incapacity" is so .contrary to the great

---

1. The former act was repealed by the enactment of the Texas Workers' Compensation Act, ch. 1, §§ 1.01 et seq., 1989 Tex.Gen.Laws 1–122.

weight and preponderance of the evidence as to be manifestly wrong and unjust. Secondly, appellant claims that the Upshur County District Court erred in granting appellee's motion to transfer venue of the suit to a district court in Gregg County, (1) by incorrectly concluding that a worker can have "only one county of residence under the venue provisions of the workers' compensation laws[,]" and (2) by impliedly finding that Upshur County "was not a county of residence" of appellant at the time of his injury when such a finding "was supported by factually insufficient evidence [and] was against the great weight and preponderance of the evidence." We affirm.

As we understand appellant's arguments under his second point of error, he contends that his pleadings, affidavit, deposition testimony, and response to appellee's motion to transfer venue are sufficient to make a prima facie case that he had a second residence in the county of suit at the time of his injury on August 12, 1986.

The parties agree, and rightly so, that venue of this suit is governed by former TEX.REV.CIV.STAT.ANN. art. 8307, § 5,[2] and art. 8307a.[3] *See Insurors Indemnity & Insurance Co. v. Brown*, 172 S.W.2d 174, 176 (Tex.Civ.App.—Beaumont 1943, writ ref'd); *Texas Employer's Insurance Association v. Orozco*, 669 S.W.2d 427, 429–430 (Tex.App.—Amarillo 1984, writ dism'd); *Texas Employer's Insurance Association v. Ribble*, 260 S.W.2d 719, 720 (Tex.Civ. App.—Eastland 1953, no writ); *see also* TEX.CIV.PRAC. & REM.CODE ANN. §§ 15.016 and 15.038 (Vernon 1986). The clear language of articles 8307 and 8307a *mandates* venue of appeals from awards of the Industrial Accident Board to a district court "in the county where the injury occurred, or in the county where the employee resided at the time the injury occurred." Since it is

undisputed that the injury occurred in the county of trial (Gregg County), the issue before us is, whether venue was also proper in Upshur County.

Both parties appear to be in agreement that, under controlling case law, a worker appealing an award of the Industrial Accident Board pursuant to articles 8307 and 8307a may have two or more places of residence. *See Snyder v. Pitts*, 150 Tex. 407, 241 S.W.2d 136 (1951). The parties disagree, however, as to whether appellant made a prima facie case, showing that certain real property (house and land) located in Upshur County constituted his "second residence," as that term is defined in *Snyder*, to wit:

A second residence away from a domicile within the meaning of the first sentence of article 1995[4] must include the following elements:

1. A fixed place of abode within the possession of the defendant

2. occupied or intended to be occupied consistently over a substantial period of time

3. which is permanent rather than temporary.

*Snyder*, 241 S.W.2d at 140.

Appellee objected to venue in Upshur County, alleging that mandatory venue lies in Gregg County under article 8307a. In support of those allegations, the appellee relies upon the pleadings, the appellant's deposition and the affidavit of W.E. Harper. Harper testified by affidavit, that "on August 12, 1986, [appellant] lived at 513 Roden Lane, Gladewater, Texas" and that such address was "located in Gregg County, Texas."

In his deposition testimony, appellant stated that he was "born and raised" in Dallas; that he "came back to East Texas"

---

**2.** This article and section was last amended before its repeal in 1989 by the Act of May 23, 1977, ch. 412, § 1, 1977 Tex.Gen.Laws 1113–1114 (hereinafter called article 8307).

**3.** This article was last amended before its repeal in 1989 by the Act of April 27, 1979, ch. 112, § 1, 1979 Tex.Gen.Laws 203 (hereinafter called article 8307a).

**4.** We conclude that *Snyder's* interpretation of "article 1995" is also applicable to the language set forth in articles 8307 and 8307a, and particularly that language reading, in article 8307, "And he shall within twenty (20) days after giving such notice bring suit in the county where the injury occurred, or *in the county where the employee resided at the time the injury occurred....*" (emphasis added); *see also* article 8307a.

in February, 1980, and lived at Route 3, Box 302A, Gladewater in Upshur County where his mother, Clara Cooks, lived. He indicated that his mother's property was located in the "Red Rock community ... partly in Gregg County and partly in Upshur County...." Appellant related that, when he moved into his mother's house in Red Rock, he was separated from his second wife and he continued to live in the house "until me and Carolyn [his present wife] got married." Appellee testified that he and Carolyn married in March 1983 and that shortly thereafter, when "school was out [in Gladewater]," they moved into an apartment in Longview. He said that, in February of 1986, he moved back to the Roden Lane [5] address in Gladewater where he lived until the latter part of August, 1987, when he moved to 313 Lake Lamond, Apt. 99, located in Longview (Gregg County). Appellant testified that when he was injured on August 12, 1986, he was "living ... at [the] Rodden Lane address." However, he also testified as follows, to wit:

Q. [By appellee's counsel]: [6] I want to get back to this residence question ... but when you had this [injury] happen to you on August 12, 1986, you were living at the Rodden Lane address in Gladewater, correct?

A. Right.

Q. That is where you slept every night?

A. Other than when I was out in the country. That is my mother's house there, but I have animals out there. I have been raising a lot of hogs, chickens and stuff like that. And me and my boys, we would spend the night out there and feed them or go hunting or target shooting or whatever, keep the yard up, edge, trim, raking the yard.

Q. Is your family a close family?

A. Very loving and close.

Q. And you go up to your mother's house and work with the animals and play with the boys and so on and so forth?

A. Yes.

....

A. I stay the whole weekend and sometimes we stay a week. Because after I got married, we still were living there, me and my kids. And my wife was living in Longview. And we stayed there doing the things because she can't do it, my mother.

Following the above testimony, appellant related that he received some mail (bills) at his Gregg County address, but said that he also received "bank statements and all that stuff ..." at his Upshur County address (Route 3, Box 302a). Appellant maintained "that [the Upshur County address] is my permanent address." Appellant testified that his mother held legal title to the Upshur County property.

Following the initial questioning of appellant by counsel for appellee, appellant's own counsel questioned him further in regard to the home in Upshur County. Appellant responded to that questioning by stating that he had keys to his mother's house and to various outbuildings and sheds on the property, and that he kept his personal clothing and various tools and equipment on the Upshur County property. Appellant, when asked by his counsel, "[a]nd since February of 1980, have you used that [Upshur County house] as a residence continuously?[,]" responded, "Yes sir." Thereafter, in response to further questioning by appellee's counsel, appellant stated that he also had "the other residence at Rodden Lane[,]" for which he paid a monthly rental of $200.00. He further testified that the school bus normally picked up and dropped off his school-age children at the Rodden Lane address, unless he was at his mother's house, in which case the bus picked up and dropped off the children there. Plaintiff's exhibit number 1, attached to his deposition, shows that appellant was registered to vote during the period of time from March 1, 1984, to the date

5. It is undisputed that the "Roden Lane address" (which has been spelled "Roden" and "Rodden") is located in Gregg County and that the house located on Route 3, Box 302a is located in Upshur County.

6. Appellant's deposition was taken by appellee.

of trial in "precinct 16" in Upshur County, Texas.

Following the venue hearing conducted on January 12, 1988, the 115th Judicial District Court of Upshur County sustained appellee's motion to transfer venue and issued a written order on March 18, 1988 transferring the case to "a district court of Gregg County, Texas." The order recites that the court heard counsel's arguments and "considered the pleadings, deposition and affidavits on file...."

Appellee claims that, since no findings of fact or conclusions of law were requested or filed, this court must affirm the venue order "if it can be upheld on any legal theory that finds support in the evidence." Additionally, appellee argues that:

> "[a]bsent a statement of facts[7] for the venue hearing, this court cannot decide the factual sufficiency of the venue determination in [appellant's] favor." (Citation omitted.) "Rather, without a statement of facts, this court must presume that sufficient evidence was introduced to support the implied finding that Upshur County was not [appellant's] residence...." (Citation omitted.)

We reject appellee's above contentions for several reasons. First, we hold that Texas Rules of Civil Procedure numbers 296–299 are inapplicable to venue hearings under the practice and procedures prescribed by Texas Rules of Civil Procedure 86–89; second, we reject them because we have granted appellant's motion for filing the so-called "statement of facts" of the venue hearing (the "statement of facts" contains no live testimony or evidence of any kind); and third, under civil procedure rule 87, sections 1, 2, 3(a), (b) and (c) and 88, proof regarding venue allegations is to be made by the parties by way of "affidavits and attachments" and discovery products. This procedure is closely akin to the requirements for summary judgment proof. Thus, in reviewing the venue determination made by the trial court, we must look to the "evidence" introduced under the applicable version of Rule 87[8] which read in pertinent part:

1. **Consideration of Motion.** The determination of a motion to transfer venue shall be made promptly by the court and such determination must be made in a reasonable time prior to commencement of the trial on the merits. The movant has the duty to request a setting on the motion to transfer. Except on leave of court each party is entitled to at least 45 days notice of a hearing on the motion to transfer.

2. **Burden of Establishing Venue.**

(a) *In General.* A party who seeks to maintain venue of the action in a particular county in reliance upon Section 15.001 (General Rule), Sections 15.011–15.017 (Mandatory Venue), Sections 15.031–15.040 (Permissive Venue), or Sections 15.061 and 15.062 (Multiple Claims), Civil Practice and Remedies Code, has the burden to make proof, as provided in paragraph 3 of this rule, that venue is maintainable in the county of suit. A party who seeks to transfer venue of the action to another specified county under Section 15.001 (General Rule), Sections 15.011–15.017 (Mandatory Venue), Sections 15.031–15.040 (Permissive Venue), or Sections 15.061 and 15.062 (Multiple Claims), Civil Practice and Remedies Code, has the burden to make proof, as provided in paragraph 3 of this rule, that venue is maintainable in the county to which transfer is sought. A party who seeks to transfer venue of the action to another

---

7. On June 14, 1989, appellant timely filed a motion herein to extend the time for filing the "statement of facts" of the venue hearing conducted on January 12, 1988, in the Upshur County district court. The "statement of facts" was submitted along with the motion. On June 22, 1989, this court *passed* the motion "for consideration along with the merits [of the appeal]." We now grant appellant's motion and permit the filing of the statement of facts of the venue hearing.

8. Since the venue hearing in this case took place in 1988, we rely on the rules of civil procedure in effect at the time of the hearing and all references will be to those earlier rules unless specified otherwise. The 1990 amendments modified the language of the pertinent rules somewhat without major substantive alteration.

specified county under Sections 15.011–15.017, Civil Practice and Remedies Code on the basis that a mandatory venue provision is applicable and controlling has the burden to make proof, as provided in paragraph 3 of this rule, that venue is maintainable in the county to which transfer is sought by virtue of one or more mandatory venue exceptions.

(b) *Cause of Action.* It shall not be necessary for a claimant to prove the merits of a cause of action, but the existence of a cause of action, when pleaded properly, shall be taken as established as alleged by the pleadings; but when the claimant's venue allegations are specifically denied, the pleader is required to support his pleading that the cause of action, or a part thereof, accrued in the county of suit by prima facie proof as provided in paragraph 3 of this rule. If a defendant seeks transfer to a county where the cause of action or a part thereof accrued, it shall be sufficient for the defendant to plead that if a cause of action exists, then the cause of action or part thereof accrued in the specific county to which transfer is sought, and such allegation shall not constitute an admission that a cause of action in fact exists. A defendant who seeks to transfer a case to a county where the cause of action, or a part thereof, accrued shall be required to support his motion by prima facie proof as provided in paragraph 3 of this rule.

. . . .

3. **Proof.**

(a) *Affidavits and attachments.* All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party. When a venue fact is specifically denied, the party pleading the venue fact must make prima facie proof of that venue fact. Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such

pleading. Affidavits shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify.

(b) *The Hearing.* The court shall determine the motion to transfer venue on the basis of the pleadings, any stipulations made by and between the parties and such affidavits and attachments as may be filed by the parties in accordance with the preceding subdivision of this paragraph 3 or of Rule 88.[9]

(c) If a claimant has adequately pleaded and made prima facie proof that venue is proper in the county of suit as provided in subdivision (a) of paragraph 3, then the cause shall not be transferred but shall be retained in the county of suit, unless the motion to transfer is based on the grounds that an impartial trial cannot be had in the county where the action is pending as provided in Rules 257–259 or on an established ground of mandatory venue. A ground of mandatory venue is established when the party relying upon a mandatory exception to the general rule makes prima facie proof as provided in subdivision (a) of paragraph 3 of this rule.

. . . .

Under Rule 87, section 3(a), "[p]rima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachment[s] to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." A "prima facie" case is also authoritatively defined in BLACK'S LAW DICTIONARY 1071 (5th ed. 1979), to mean "[s]uch as will prevail until contradicted and overcome by other evidence. (Citation omitted). . . . A case which has proceeded upon sufficient proof to that stage where it will support finding if evidence to the contrary is disregarded. (Citation omitted.)"

The plain language of Rule 87, section 3(c), indicates that, if the plaintiff properly pleads venue and supports that pleading by

---

9. Rule 88 provides in part that deposition testimony "and other discovery products . . . relevant to determination of proper venue may be considered. . . . when . . . [referenced] in, an affidavit of a party, a witness or an attorney who has knowledge of such discovery."

making a prima facie case that "venue is proper in the county of suit," the court shall not transfer the case but *shall retain the suit in the county of suit*, unless the transfer motion is based on grounds not pertinent here.[10] Thus, our task here is to review the venue evidence before this court and determine whether appellant carried his burden to establish a prima facie case that venue was proper in Upshur County pursuant to Rules 87 and 88.

■ Appellee makes the argument, in effect, that appellant failed to establish a prima facie case that venue was proper in Upshur County. Appellee characterizes appellant's presence at his mother's home in Upshur County as a visitation. It argues that appellant's "connection" with that residence "is at his mother's pleasure." Thus, appellee argues that appellant lacks "control, custody or management" of the Upshur County property. We agree. The court in *Snyder* makes it clear that one attempting to establish a "second residence away from a domicile ..." under the general venue statute "must have some *right* of possession and not be a mere visitor." *Snyder*, 241 S.W.2d at 140 (emphasis added). The evidence reveals that appellant visited the Upshur County home but neither owns any interest in the Upshur County property nor pays any rent for a right to occupy the same. Hence, we conclude that he failed to establish a prima facie case that venue was proper in Upshur County under *Snyder*'s rule. We overrule appellant's second point of error.

■ We now address appellant's first point of error whereby he claims that the Gregg County court erred in overruling his motion for new trial grounded on his contention that the jury's refusal to find that his on-the-job injury was "a producing cause of any period of total incapacity is so against the great weight and preponderance of the evidence as to be manifestly unjust."

To determine this point we must consider all of the evidence adduced at trial. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d

660 (1951). The record reveals that appellant was injured on August 12, 1986, during the course and scope of his employment with the City of Gladewater. Appellant testified that he saw a doctor within the next day or so (Wednesday, August 13, 1986, or Thursday, August 14, 1986) and was hospitalized in "Hart's Hospital & Clinic" for about three weeks under the care of Dr. Hart. He also testified that he next saw Dr. McDonald, a physician in Fort Worth, and then saw Dr. Holladay for treatment. He also related that he had seen Dr. Callewart in Dallas. After that, on his attorney's advice, he saw Dr. Stephen Lewis, a Doctor of Chiropractics; he continued to see Dr. Lewis "two [or] three times a week." Appellant testified that, following his injury, his physical activities were limited and that if he stood on his feet and attempted to do light tasks, such as cooking, he felt pain in his legs and lower back, and in his "foot and other places I hate to mention." Appellant confirmed that, as of the date of trial, January 17, 1989, he had "problems in riding in a car...." He stated that, since his injury, he has been unable to go hunting and fishing with his sons without experiencing pain, and also has been unable to do yard work, such as mowing, without pain. He also testified that, because of his injury, he has been unable to work in his garden since August of 1986.

On cross-examination of appellant, it was established that he first saw Dr. Stephen Lewis in March or April of 1988.

Appellant's wife, Carolyn Cooks, testified that since the date of his injury, appellant "walks and ... moves around a lot slower than he used to." She said, "You know, he just—he can't do anything." Mrs. Cooks testified that appellant does some cooking "for the kids, you know, and help[s] them with lessons. And that's basically it." She related that appellant has problems sleeping at night and "has discomfort" getting in and out of chairs at home. She corroborated appellant's testimony that he could no longer fish or hunt.

---

10. Appellee presented no proof establishing a       mandatory ground for venue in Gregg County.

Stephen Lewis, D.C., also testified for appellant. Dr. Lewis said that he first saw and examined appellant on March 3, 1988. He stated that he "found muscle spasms in the ... mid-back area, also down on the hip area on both sides...." Dr. Lewis said that, based on certain tests, he concluded that appellant's complaints were genuine. Dr. Lewis also related that other tests performed by him established that appellant was in pain in the low back area, indicating the "L–4 area as being the major area of injury." Lewis stated that he also found objective evidence of nerve root damage affecting appellant's left leg. Based on this examination of appellant, Lewis concluded that appellant had sustained a "jamming of the facets" in his low back area. Lewis also testified that he x-rayed appellant's low back area and that the x-rays confirmed his diagnosis.

Dr. Lewis went on to testify that he began a course of chiropractic treatments for appellant and that appellant showed marked improvement. He stated, however, that appellant "is [now] about as good [as] he's going to get" and that appellant's problem will "have a tendency to flare ... up again." After further review of the x-rays, Lewis stated that he considered his treatment of appellant to be effective to improve appellant's problems. Later Lewis affirmed that appellant was unable to "do a job that requires him to do bending, stooping, lifting, climbing, those type duties" because "[i]t would aggravate the injury." When asked whether appellant's condition will be permanent or temporary, Lewis responded, "[t]he relief that he's gotten to this point, I believe is as good as he's going to get. So, the damage that's left is permanent." On redirect examination, Lewis testified that he was not surprised that the Cat Scan and Magnetic Resonance Imaging (M.R.I.) procedures performed by the medical doctors on appellant's low back area showed normal alignment of appellant's spine because the "emphasis of the [studies] was of the [soft tissue] discs. And the problem was in the facets [of appellant's spine]."

Appellee introduced several medical reports. The first was a report from Dr. Robert A. Callewart, M.D. (defendant's exhibit number 3). Dr. Callewart reported that, following an examination of appellant on July 14, 1987, he recommended that a "Lumbar CT–Scan" be performed. Dr. Callewart's report reveals that the procedure was performed on July 20, 1987, and, according to Dr. Callewart, "[t]he CT–Scan performed by Diagnostic Neuroradiology (a medical clinic) ... is normal. In view of the normal subjective and objective physical findings and normal x-rays, I see no significant disability in this man.... He may return to work as of July 21, 1987."

Defendant's exhibit number 5, a "Progress Report" dated October 15, 1987, rendered by Dr. Robert E. Holladay, M.D., shows that appellant "underwent lumbar M.R.I. on [that date] which was found to be within normal limits. There is no evidence of disc herniation, disc protrusion or degeneration or loss of hydration. In summary, the study on the lumbar spine appears to be normal showing no structural abnormality."

Defendant's exhibit number 6 is the actual report regarding the cat scan performed by Dr. Shelley B. Rosenbloom, M.D., of the Dallas Clinic called "Diagnostic Neuroradiology, P.A." Dr. Rosenbloom reported that the cat scan demonstrated that appellant's spine "from the sacrum to the L3 level ..." was "in normal alignment. Disc space height is maintained throughout."

Rosenbloom's report also recited that

Axial images [of the area] reveal normal contour of the discs at L5–S1, L4–5, and L3–4. The neural foramina of these levels are unremarkable. *The facet joints are unremarkable.* The distal sac is rather small and dorsally placed in the canal. (Emphasis ours.)

Finally, defendant's exhibit number 7 is a "Progress Report" rendered by orthopedic surgeon, Robert E. Holladay, on January 13, 1988, after Holladay's examination of appellant on that date. A copy of said progress report is attached to this opinion as Appendix "A."

Appellee presented no *live* medical expert testimony to define or explain the

technical medical terms used in the four written reports. The appellee argues that, under the state of the record, the extent and duration of appellant's incapacity is a fact question for the sole decision of the jury. We agree. Here, as appellant concedes, the medical evidence bearing on the duration of his incapacity was conflicting. Appellant testified, in effect, that he was totally incapacitated by his injury. Dr. Lewis, his treating chiropractic physician, testified that appellant was totally incapacitated. However, the language of Dr. Holladay found in his "progress report" dated January 13, 1988, and in Dr. Rosenbloom's report based on the cat scan examination of appellant, is quite sufficient to contradict Dr. Lewis' testimony that appellant's injury produced a total incapacity, as distinguished from a partial incapacity, in terms that the lay jury could well understand. The medical records of Drs. Callewart and Holladay, as well as the report of Dr. Rosenbloom, show no injury to appellant's lumbar spine; and, as Callewart wrote, they indicate "[n]o significant disability in [appellant]."

Appellant argues that, since it is undisputed that he spent approximately two weeks in the hospital shortly after his injury, the jury's refusal to affirmatively answer Jury Question No. 3,[11] was so contrary to the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We are persuaded that this contention is untenable. Common sense and reason lead us to conclude that proof of confinement in a hospital or other medical facility, standing alone, falls short of proof that the patient is totally incapacitated for the time of his confinement. Confinement in a medical facility might be necessary simply for proper medical evaluation and treatment of any injury, however severe. Here, appellant provided no detailed explanation regarding the two-week period he spent in Hart's Hospital. Appellant himself testified that, during his hospital stay, he received heat therapy and medi-

cation and had x-rays taken, presumably of his lumbar spine. Dr. Hart, however, did not testify, and no medical records were introduced respecting appellant's admission or treatment in "Hart's Hospital & Clinic."

In summary, we are unable to conclude that the jury's negative answer to jury question number 3 was so contrary to the great weight and preponderance of the evidence as to be manifestly wrong or unjust.[12] Appellant's first point of error is overruled, and the judgment is affirmed.

---

11. That question read: "Was the injury a producing cause of any total incapacity?"

12. (After careful study of the guidelines found in *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986)).