Javier RUIZ, Petitioner,

v.

CONOCO, INC., Respondent.

No. D–1903.

Supreme Court of Texas.

Sept. 29, 1993.

Supplemental Appendix by Justice Hecht
Feb. 9, 1994.

Dissenting Opinion of Justice Doggett
on Motion for Rehearing Feb. 9, 1994.

Anthony F. Constant, Kimberley Hall Seger, Russell H. McMains, Corpus Christi, for petitioner.

Darrell L. Barger, Carlos Villarreal, Corpus Christi, Marina K. Pita, W. James Kronzer, Jr., Leslie C. Taylor, Houston, for respondent.

## OPINION ON REHEARING

HECHT, Justice.

The motion for rehearing of Conoco, Inc. is granted, and our prior opinion is withdrawn. This is now the opinion of the Court.

This case presents four principal questions: (1) is limitations tolled on a cause of action of a person of unsound mind during the pendency of a lawsuit brought on his behalf? (2) does the involuntary dismissal of an action for want of prosecution while a motion to transfer venue to another county is pending fix venue in that other county? (3) is appellate review of a venue determination limited to whether the trial court abused its discretion in ruling on the motion to transfer, or does it extend to whether the venue issue was in fact properly decided based upon the entire record in the trial court? and (4) for a foreign corporation to be sued in a county where it has an agent or representative, must that person have broad discretionary authority to act for the corporation? The trial court held that this action is not barred by limitations, and that venue was proper in Starr County. The court of appeals affirmed as to limitations but reversed as to venue. 818 S.W.2d 118 (1991). We affirm.

I

Javier Ruiz, a resident of Hidalgo County, sustained severe and permanent head injuries in Webb County while working for Cameron Iron Works, Inc. on an oil well owned by Conoco, Inc. Ruiz and his wife filed suit in Harris County against Cameron, which immediately joined Conoco as a third-party defendant. Ruiz and his wife later sued Conoco in Zapata County. Both suits were dismissed, the former for discovery abuse and the latter for want of prosecution. Thereafter, suit was filed in Hidalgo County for an adjudication that Ruiz was mentally incompetent, no such action having previously been filed. Ruiz was adjudged incompetent from the date of his accident, and his wife was appointed guardian of his estate and person. Ruiz then sued Conoco in Starr County through his wife as his newly appointed guardian. The present appeal arises out of this third lawsuit.

Conoco moved for summary judgment on the grounds that the Starr County action is barred by limitations. The dates of the events just described, important to the limitations issue, are as follows:

| | |
|---|---|
| 1/24/84 | Ruiz injured |
| 1/13/86 | Ruiz sued Cameron in Harris County eleven days before the expiration of two years from the date of his accident |
| 1/26/87 | Ruiz sued Conoco in Zapata County more than three years after his accident |
| 4/21/87 | Zapata County suit dismissed after it had been pending less than three months |
| 4/29/88 | Harris County suit dismissed after it had been pending more than twenty-five months |
| 1/6/89 | Ruiz adjudicated mentally incompetent from the date of his accident |
| 9/22/89 | Ruiz sued Conoco in Starr County through his newly appointed guardian |

The trial court denied Conoco's motion for summary judgment, holding that Ruiz' legal disability tolled the running of limitations.

Conoco also moved to transfer venue of Ruiz' action from Starr County to Harris County. Conoco is a Delaware corporation with its principal office in Harris County. In the Zapata County suit, Conoco moved to transfer venue to Harris County, and that motion remained pending when the action was dismissed for want of prosecution. Conoco contends that the pendency of its motion to transfer at the time of dismissal fixed venue in Harris County. Conoco also contends that venue was improper in Starr County because it had no "agency or representative" there. The trial court rejected both contentions and denied Conoco's motion.

Midway through the trial the parties reached an agreement with the trial court's approval pursuant to which the evidence was closed, the jury was discharged, the trial court rendered judgment against Conoco for $4.5 million, and Conoco paid Ruiz' wife, children and attorneys $450,000. Conoco did not agree to the judgment but simply did not object to its rendition, preserving its right of appeal, but agreeing to limit that appeal to two issues, limitations and venue. The parties expressly contemplated that if Conoco ultimately prevailed on either issue, the Starr County judgment would be reversed; that if it prevailed on the limitations issue, judgment would be rendered that Ruiz recover nothing; and that if Conoco prevailed on the venue issue, the case would be remanded and transferred to a district court in Harris County for further proceedings.[1]

The court of appeals held that Ruiz' suit was not barred by limitations, but that venue was not proper in Starr County. Consequently, the court of appeals reversed and remanded, ordering that the case be transferred to Harris County. 818 S.W.2d 118. Both Ruiz and Conoco appeal.

## II

By prescription of the applicable statute of limitations, Ruiz' action must be brought within two years of the date it accrued. TEX.CIV.PRAC. & REM.CODE § 16.003 (1986). Since Ruiz' action accrued on the date of his injury, and the present action was not filed until well over five years later, the action is barred unless the running of the limitations period was tolled. Ruiz claims that the limitations period in section 16.003 was tolled by his mental incompetency according to the provisions of section 16.001 of the same subchapter, which states in pertinent part:

(a) For the purposes of this subchapter, a person is under a legal disability if the person is:

(1) younger than 18 years of age, regardless of whether the person is married; or

(2) of unsound mind.

(b) If a person entitled to bring a personal action is under a legal disability

---

1. We note that this agreement does not moot an appeal because a real dispute remains between the litigants. We allowed an appeal in similar circumstances in *Cain, Brogden & Cain, Inc. v. Local Union No. 47*, 155 Tex. 304, 285 S.W.2d 942 (1956).

when the cause of action accrues, the time of the disability is not included in a limitations period.

Conoco concedes that Ruiz was under a legal disability—mental incompetency—from the date of his accident, but argues that limitations should have been tolled only during periods when Ruiz did not have access to the courts to assert his rights. Specifically, Conoco argues that limitations was not tolled while the Harris County and Zapata County suits were pending, a period exceeding two years. Thus, Conoco contends, Ruiz' action is barred by limitations.

Texas courts have had only limited opportunities to consider the effect of the tolling provision now codified as section 16.001. Its general purpose has been stated as follows:

> [T]o protect a legally disabled party *who has no access to the courts*, and to insure that his right to bring suit will not be precluded by the running of a limitations statute prior to the removal of his disability.

*Johnson v. McLean*, 630 S.W.2d 790, 793 (Tex.App.—Houston [1st Dist.] 1982, no writ) (emphasis added); *see also Smith v. Erhard*, 715 S.W.2d 707, 708 (Tex.App.—Austin 1986, writ ref'd n.r.e.); *Adler v. Beverly Hills Hosp.*, 594 S.W.2d 153, 158 (Tex.Civ.App.—Dallas 1980, no writ). Conoco focuses on the "no access to the courts" language of *Johnson*, arguing that Ruiz did in fact have such access and therefore the purpose for tolling limitations was served. We do not construe the tolling provision so narrowly.

In *Johnson*, a prisoner sued his former attorney but did not exercise due diligence in serving him with process. The trial court held that Johnson's action was barred by limitations. Johnson argued that the tolling provision relieved him of the requirement of due diligence in prosecuting and pursuing his claim as long as he was incarcerated. At the time, imprisonment was included as a legal disability under the statute.[2] The court of appeals agreed with the trial court, holding that "inasmuch as appellant timely filed his lawsuit *during his period of legal disability*, the protective provisions of [the tolling stat-

ute] do not apply." 630 S.W.2d at 793 (emphasis added).

■ The reasoning in *Johnson*—that access in fact to the courts suspends a legal disability—has not been utilized in cases involving minors. *See Greathouse v. Fort Worth & Denver City Ry.*, 65 S.W.2d 762, 765 (Tex.Comm'n App.1933, holding approved); *Hopkins v. Spring Indep.Sch.Dist.*, 706 S.W.2d 325, 326 (Tex.App.—Houston [14th Dist] 1986), *aff'd*, 736 S.W.2d 617 (Tex. 1987); *Galveston, H. & S.A. Ry. v. Washington*, 25 Tex.Civ.App. 600, 63 S.W. 538 (1901, no writ). We have compared the legal disabilities of minority status and mental incapacity:

> It is impossible to avoid the analogy between the situation of the child plaintiff ... and the arguably incompetent plaintiff in this case. Traditionally the interests of minors, incompetents, and other helpless persons are viewed in law as substantially similar, and both the substantive law and the rules of procedure accord them comparable treatment. In many respects, mentally incompetent persons present a more compelling case for legal protection. They are frequently less communicative, more vulnerable and dependent than children.... The mentally incompetent are less likely than children to have someone intimately interested in their welfare and inclined to act in their behalf.

*Tinkle v. Henderson*, 730 S.W.2d 163, 166 (Tex.App.—Tyler 1987, writ ref'd). Access to the courts does not alone provide a legally incapacitated person a viable opportunity to protect his legal rights. The disability of a person of unsound mind is not only the lack of access to the courts, but also the inability to participate in, control, or even understand the progression and disposition of their lawsuit. Whatever validity may remain in *Johnson* as it applies to prisoners, the purpose and scope of the tolling provision, as applied to minors *and* persons of unsound mind, extends beyond merely ensuring their access to the courts. *See O'Brien v. Massachusetts Bay Transp. Auth.*, 405 Mass. 439, 541

---

2. Imprisonment was deleted from the definition of legal disability in 1987. Act of June 19, 1987, 70th Leg., ch. 1049, § 56, 1987 Tex.Gen.Laws 3539.

N.E.2d 334, 337 (1989) ("[I]t is plain that the disabilities to which the Legislature is referring are the disabilities of minority or mental incapacity themselves, not the disability to bring suit."); *Sahf v. Lake Havasu City Ass'n for Retarded & Handicapped,* 150 Ariz. 50, 721 P.2d 1177, 1182 (Ct.App.1986); *Paavola v. St. Joseph Hosp. Corp.,* 119 Mich.App. 10, 325 N.W.2d 609, 611 (1982); *Wolf v. United States,* 10 F.Supp. 899, 900 (S.D.N.Y. 1935) ("The view is taken that the Legislature had in mind, not merely the inability to sue, but also the difficulties of the incompetent in giving information and in testifying.").

For these reasons, we conclude that the mere commencement of a lawsuit by, or on behalf of, a legally incapacitated individual is, considered alone, insufficient to deny the protection of the tolling provision. In reaching this conclusion, we follow what we believe to be the well-established majority rule. As noted in *Luchini v. Harsany,* 98 Or.App. 217, 779 P.2d 1053, 1056 (1989):

It is the established rule in the majority of jurisdictions deciding the issue that the mere commencement of litigation has no effect on a tolling statute.... The majority continues to hold that the extension created for minors, prisoners and the mentally handicapped is not terminated by the commencement of litigation by the representative.

*See Van Buskirk v. Todd,* 269 Cal.App.2d 680, 75 Cal.Rptr. 280, 286 (1969), *quoting* M.C. Dransfield, Annotation, *Appointment of Guardian for Incompetent or for Infant as Affecting Running of Statute of Limitations Against Ward,* 86 A.L.R.2d 965, 976 (1962) ("[I]f ... [the guardian ad litem,] having instituted an action within the statutory period, discontinues it, the rights of the infant are not prejudiced thereby, and he may still take advantage of his disability, the action not being barred until the lapse of the statutory period after he becomes of age."); *Tzolov v. International Jet Leasing, Inc.,* 232 Cal.App.3d 117, 283 Cal.Rptr. 314, 317–18 (1991) ("By virtue of Tzolov's incompetence the limitation period has not run, notwithstanding appointment of a guardian ad litem and the filing and subsequent dismissal of the first action."); *Young v. Key Pharmaceu-*

*ticals, Inc.,* 112 Wash.2d 216, 770 P.2d 182, 186 (1989); Jean E. Maess, Annotation, *Tolling of State Statute of Limitations in favor of One Commencing Action Despite Existing Disability,* 30 A.L.R.4th 1092, 1093 (1984). *See also Holley v. Mandate Realty Corp.,* 121 A.D.2d 202, 503 N.Y.S.2d 350, 352 (1986); *Smith v. Bordelove,* 63 Mich.App. 384, 234 N.W.2d 535, 537 (1975); *Carr v. Allied Aviation Serv. Corp.,* 40 A.D.2d 608, 335 N.Y.S.2d 914, 915 (1972).

We are aware of "[t]he possibility that in a case such as this a limitation period may remain open for the lifetime of the plaintiff...." *Tzolov,* 283 Cal.Rptr. at 317. However, this possibility

does not dictate a different result: The tolling statute reflects a considered legislative judgment that in enumerated circumstances the strong policy in favor of prompt disposition of disputes must give way to the need to protect a plaintiff who is unable to protect himself or herself. That need will continue so long as the plaintiff remains incompetent.

*Id. See Young,* 770 P.2d at 187; *O'Brien,* 541 N.E.2d at 338; *Sahf,* 721 P.2d at 1182; *Paavola,* 325 N.W.2d at 611 ("a contrary holding would constitute unjustifiable tampering with the significant public policy clearly reflected in ... [the tolling provision concerning] the protection and preservation of the substantive rights of mentally incompetent persons"). This does not mean that an action commenced by, or on behalf of, a legally disabled individual can never be given preclusive effect. But we do not face such an issue here.

### III

■ Conoco argues that venue was improper in Starr County because the dismissal of the Zapata County suit for want of prosecution while its motion to transfer venue to Harris County was pending fixed venue in Harris County. We disagree.

Under the old plea of privilege practice that existed before the venue statute and the rules were amended in 1983, a so-called "res judicata" rule was applied concerning venue. This rule stated that if a plaintiff dismissed a case by nonsuit while a plea of privilege was

pending, venue was fixed in the county named in the plea. *See Royal Petroleum Corp. v. McCallum,* 134 Tex. 543, 135 S.W.2d 958, 967 (1940); *Tempelmeyer v. Blackburn,* 141 Tex. 600, 175 S.W.2d 222, 224 (1943). The rule was not really one of res judicata; rather, the dismissal was deemed an admission of the merit of the plea of privilege. *Id.*

We need not decide whether a similar rule is still applicable under the current venue statute and rules because there was no *voluntary* nonsuit in this instance. One cannot consider that a party whose action is involuntarily dismissed for want of prosecution has conceded the merits of pending motions. When the suit is dismissed for want of prosecution while the motion to transfer venue is pending, it is not effective to fix venue in the county named in the motion to transfer venue. Consequently, we conclude that dismissal of Ruiz' Zapata County suit for want of prosecution while Conoco's motion to transfer venue was pending did not "fix" venue in Harris County.

## IV

■ Before considering the denial of Conoco's motion to transfer venue based upon Conoco's "agency or representative" in Starr County, we must first determine the appropriate standard for appellate review of such a trial court determination.

The 1983 revisions in Texas venue practice have resulted in some confusion concerning the appropriate standard of appellate review of venue determinations. One court has held that appellate courts should review venue determinations by a preponderance of the evidence standard. *See Texas City Refining v. Conoco, Inc.,* 767 S.W.2d 183, 185 (Tex. App.—Houston [14th Dist.] 1989, writ denied). Others have limited review of venue determinations to the evidence before the trial court at the venue hearing. *See Cooks v. City of Gladewater,* 808 S.W.2d 710, 715–16 (Tex.App.—Tyler 1991, no writ) ("our task here is to review the venue evidence before this court and determine whether appellant carried his burden to establish a prima facie case that venue was proper"); *Kimmell v. Leoffler,* 791 S.W.2d 648, 653 (Tex.App.—San Antonio 1990, writ denied) ("The district

court properly determined, on the basis of the pleadings and affidavits before it, that venue should be transferred"); *Flores v. Arrieta,* 790 S.W.2d 75, 77 (Tex.App.—San Antonio 1990, writ denied) ("appellant has failed in her burden of showing the trial court erred in granting the change of venue"); *Lewis v. Exxon Co., U.S.A.,* 786 S.W.2d 724, 728 (Tex.App.—El Paso 1989, writ denied). Still others have not articulated a standard of review. *See Humphrey v. May,* 804 S.W.2d 328, 330 (Tex.App.—Austin 1991, writ denied); *Miller v. Kendall,* 804 S.W.2d 933, 943 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Kansas City Southern Ry. v. Carter,* 778 S.W.2d 911, 915 (Tex.App.—Texarkana 1989, writ denied); *Gonzalez v. Nielson,* 770 S.W.2d 99, 101–02 (Tex.App.—Corpus Christi 1989, writ denied); *Cox Eng'g v. Funston Mach. & Supply,* 749 S.W.2d 508, 511–12 (Tex.App.—Fort Worth 1988, no writ).

The standard of appellate review is governed by Tex.Civ.Prac. & Rem.Code § 15.-064(b), which states:

> On appeal from the trial on the merits, if venue was improper it shall in no event be harmless error. In determining whether venue was or was not proper, the appellate court shall consider the entire record, including the trial on the merits.

*See* Dan R. Price, *New Texas Venue Statute: Legislative History,* 15 St. Mary's L.J. 855, 878–79 (1984). The procedure mandated by this statute is fundamentally flawed because it allows appellate review of venue on a basis different from that on which it was decided. In deciding a motion to transfer venue, the trial court is required by Rule 87, Tex.R.Civ. P., to take as true those facts of which prima facie proof is made by the party with the burden of such proof; yet in reviewing the trial court's decision, an appellate court must reverse (there cannot be harmless error) if other evidence in the record, even evidence adduced after venue was determined, destroys the prima facie proof on which the trial court relied. Prima facie proof is not subject to rebuttal, cross-examination, impeachment or even disproof. The evidence as a whole may well show that prima facie proof was misleading or wrong. But while the wisdom of the statute may be challenged,

there is no misunderstanding its plain language: an appellate court is obliged to conduct an independent review of the entire record to determine whether venue was proper in the ultimate county of suit. *See* Price, *supra,* at 878–79.

■ This review should be conducted like any other review of a trial court's fact findings and legal rulings, except that the evidence need not be reviewed for factual sufficiency. If there is probative evidence to support the trial court's determination, even if the preponderance of the evidence is to the contrary, we believe the appellate court should defer to the trial court. A remand to reconsider the issue, which is the relief ordinarily afforded for factual insufficiency of the evidence, would only increase the expense and delay of litigation in order to resolve an issue which, though important, is unrelated to the merits. Moreover, it exacerbates the difficulties already present in the rule if the appellate court decides, based on all the evidence, that the case should be remanded for a redetermination of venue, based on prima facie proof. (Would a second trial be required?) The statute does not mandate factual sufficiency review, and we believe it is neither necessary nor wise.

■ Therefore, if there is any probative evidence in the entire record, including trial on the merits, that venue was proper in the county where judgment was rendered, the appellate court must uphold the trial court's determination. If there is no such evidence, the judgment must be reversed and the case remanded to the trial court. The error cannot be harmless, according to the statute. If there is any probative evidence that venue was proper in the county to which transfer was sought, the appellate court should instruct the trial court to transfer the case to that county. Only if there is no probative evidence that venue was proper either in the county of suit or in the county to which transfer was sought should the appellate court remand the case to the trial court to conduct further proceedings on the issue of venue. This is one instance in which remand cannot be avoided. Rule 87(3)(d), TEX.R.CIV. P., contemplates that additional proof may be ordered in connection with a motion to trans-

fer if neither party makes the required showing at first. In the unusual instance where there is no probative evidence in the record that venue is proper anywhere, a remand is unavoidable.

The issue for us, then, is whether there is any probative evidence in the record to support the trial court's determination that venue was proper in Starr County. As in any other situation, we view the record in the light most favorable to the trial court's ruling. We do not defer, however, to the trial court's application of the law.

## V

■ Having determined the standard of review, we turn to the question whether venue was improper in Starr County because Conoco had no "agency or representative" there.

■ The only basis on which Ruiz asserts that venue was proper in Starr County is TEX.CIV.PRAC. & REM.CODE § 15.037, which states in pertinent part: "Foreign corporations ... not incorporated by the laws of this state, and doing business in this state, may be sued in any county in which ... the company may have an agency or representative...." We considered a similar provision in *Milligan v. Southern Express, Inc.,* 151 Tex. 315, 250 S.W.2d 194 (1952). In that case the issue was whether a motor carrier corporation could be sued in a county in which it conducted business through an independent contractor. The statute allowed suit against a corporation in the county in which the cause of action arose "provided such corporation ... has an agency or representative in such county...." Tex.Rev.Civ.Stat. art. 1995, subdivision 23 (repealed 1983). The issue we addressed was whether an "agency or representative" for purposes of venue included all persons for whose conduct a corporation might be liable, or only those persons who possess broader power and discretion to act on behalf of the corporation. In concluding that only the latter category of persons was intended by the statute, we reasoned:

the presence in the county of a mere servant, for example, a salaried employee to clean out dirty trailers, does not create

there an agency for venue purposes, even though *respondeat superior* would obviously apply. Conversely, the more or less permanent possession by a resident of the county of a broad power of attorney of the defendant might well make such a person an "agency or representative" even though his high position necessarily involved powers of discretion far beyond those of a servant and therefore similar to those of an independent contractor.... [W]e are dealing here not at all with liability of a principal for tortious conduct of the agent in the county of suit but simply with the matter of whether such an "agency or representative" there exists. It cannot be doubted that these words considered alone have several different legal meanings, and *there is no indication [in the venue statute] that agency in the sense of responsibility of the principal for tortious conduct of the agent was intended.* Rather, in our opinion, the statute refers to a situation in which the business of the defendant is, in a more or less regular and permanent form, actually conducted in the county of suit, or one in which a party possessing broad powers from the defendant resides in the county, the one instance being that of "agency" and the other of "representative."

250 S.W.2d at 198 (emphasis added). Thus, venue against a corporation may be predicated upon the presence in a county of either an agency—a more or less regular and permanent business operation—or a representative with broad powers to act for the corporation. As we held in *Milligan*, however, an ordinary employee is neither an agency nor a representative, even though the employer corporation may be liable for the employee's tortious conduct. The missing element in an ordinary employee, essential for both types of persons in the venue statute, is possession of broad power and discretion to act for the corporation. *See* 3 WILLIAM DORSANEO III, TEXAS LITIGATION GUIDE § 61.03[2][b], at 61–35 (1992) ("It is clear that an agent or representative must be shown to have discretionary power"); 2 McDONALD TEXAS CIVIL PRACTICE § 6:20, at 48 (1992) (each term "connotes some discretionary power"); Clarence Guittard & John Tyler, *Revision of the Texas Venue Statute: A Reform Long Overdue*, 32

BAYLOR L.REV. 563, 572 (1980) ("The test seems to be whether the 'agency or representative' has broad discretionary power to act for the corporation").

In this case the evidence is undisputed. At the time venue was determined, Conoco had no principal business operation in Starr County. It kept an office there from which it oversaw the operation and maintenance of some 50 wells in the Rincon Field. Conoco had five permanent and one part-time employee in Starr County. The only employee who Ruiz argues possessed any discretion at all in the conduct of Conoco's affairs was the production foreman, who, at the time his deposition was taken, lived in Hidalgo County and only worked in Starr County. The sole discretionary power the foreman possessed was to authorize the purchase of parts and services in an amount not to exceed $500 from a supplier preapproved by his superiors. Most preapproved suppliers had standing, "blanket" contracts with Conoco governing provision of parts and services.

The production foreman did not, as a matter of law, have the degree of discretion required to establish venue of Ruiz' action in Starr County. While he did possess a small measure of discretion, he lacked all of the authority of the independent contractor we considered in *Milligan*. Indeed, if venue could be predicated on the presence in a county of an employee like the production foreman here, many corporations would face suit in Texas counties far removed from any connection with the litigation. Here, for example, Ruiz, a resident of Hidalgo County, was injured in Webb County while working on a well owned by Conoco, which has its principal office in Harris County. Starr County has nothing whatever to do with this litigation. When the trial court asked Ruiz' counsel whether he was forum shopping by filing suit in Starr County, he replied that he was, but only for the purpose of going to trial faster than he would in Harris County. Whatever counsel's motives may have been, there is no basis for venue in Starr County.

There is evidence that venue was proper in Harris County, since Conoco had its principal office there. Accordingly, the court of appeals was correct in reversing the judgment

of the trial court and remanding the case with directions that it be transferred to Harris County for further proceedings.

\* \* \* \* \* \*

For the reasons explained, the judgment of the court of appeals is

*Affirmed.*

Concurring and dissenting opinion by HIGHTOWER, J., joined by DOGGETT, GAMMAGE and SPECTOR, JJ.

HIGHTOWER, Justice, concurring and dissenting.

For the last forty years it has been well settled that the venue statute which allows a foreign corporation to be sued "in any county in which the company may have an agency or representative" requires that such person or entity (1) actually conduct business in the county of suit in a more or less permanent form, (2) possess broad powers from the defendant corporation and reside in the county of suit, (3) possess powers which are discretionary and relate to commercial or business transactions concerning the corporate affairs of the defendant and whose duties and obligations are not merely matters of manual or mechanical execution, (4) possess broad discretionary power to act for the corporation so that it may be said to have a continuing presence in the county of suit, and (5) possess some discretionary power that can be exercised on behalf of the corporation. Confused? You should be. However, the Court does not acknowledge or attempt to clarify these long standing and conflicting "rules." In fact, the Court has effectively overruled *Milligan v. Southern Express, Inc.*, 151 Tex. 315, 250 S.W.2d 194 (1952) and numerous court of appeals' decisions without discussion or explanation.

The rules concerning venue should be clearly understandable and be applied in a predictable and consistent manner. By focusing on the perceived evils of forum shopping, the Court has further muddled this already confused area of Texas jurisprudence. By doing so, this Court injects an element of uncertainty into every determination of whether a person or entity is an "agency" or "representative" for section 15.037 venue purposes. The uncertainty created and perpetuated by the Court's language, given the significance of this venue rule, is sufficiently disquieting that I cannot join Part V of the Court's opinion. Thus, I join only in Parts I, II, III and IV of the Court's opinion.

### I.

Ruiz asserted that venue was proper in Starr County under section 15.037—the foreign corporation provision. Section 15.037 provides, in pertinent part:

> Foreign corporations, private or public, joint-stock companies or associations, not incorporated by the laws of this state, and doing business in this state, may be sued in any county in which all or part of the cause of action accrued, *or in any county in which the company may have an agency or representative,* or in the county in which the principal office of the company may be situated, or, if the defendant corporation has no agent or representative in this state, then in the county in which the plaintiffs or either of them reside.

Tex.Civ.Prac. & Rem.Code Ann. § 15.037 (emphasis added). The parties are in agreement that, if applicable, the "agency or representative" portion of section 15.037 controls. They disagree, however, in regard to whether Conoco had an "agency or representative" in Starr County.

This court considered the "agency or representative" language of the venue statute in *Milligan v. Southern Express, Inc.*, 151 Tex. 315, 250 S.W.2d 194 (1952).[1] In *Milligan*, we stated:

---

1. Subdivision 23 of article 1995, which was considered in *Milligan v. Southern Express, Inc.*, stated in pertinent part:

   Suits against a private corporation, association, or joint stock company may be brought in the county in which its principal office is situated; or in the county in which the cause of action or

part thereof arose; or in the county in which the plaintiff resided at the time the cause of action or part thereof arose, *provided such corporation, association or company has an agency or representative in such county. . . .*
   Tex.Rev.Civ.Stat. art. 1995, subdivision 23 (repealed 1983) (emphasis added).

It will be admitted that ... the presence in the county of a mere servant, for example, a salaried employee to clean out dirty trailers, does not create there an agency for venue purposes, even though *respondeat superior* would obviously apply. Conversely, the more or less possession by a resident of the county of a broad power of attorney of the defendant might well make such a person an "agency or representative" even though his high position necessarily involved powers of discretion far beyond those of a servant and therefore similar to those of an independent contractor. And, as before mentioned in connection with subdiv. 9 ("Crime or trespass"), we are dealing here not at all with liability of a principal for tortious conduct of the agent in the county of suit but simply with the matter of whether such an "agency or representative" there exists. It cannot be doubted that these words considered alone have several different legal meanings, and there is no indication in subdiv. 23 that agency in the sense of responsibility of the principal for tortious conduct of the agent was intended. Rather, in our opinion, the statute refers to a situation in which the business of the defendant is, in a more or less regular and permanent form, actually conducted in the county of suit, or one in which a party possessing broad powers from the defendant resides in the county, the one instance being that of "agency" and the other of "representative."

*Id.*, 250 S.W.2d at 197–98. *Milligan* further stated that "the power to contract for the principal ... and its regular use in the very name of the principal as the contracting party are certainly the strongest indication that the principal is doing business through an agency." *Id.* at 198. Some cases interpreted *Milligan* as creating two independent standards—an "agency" or a "representative"—either of which is independently sufficient to establish venue. These cases consider an "agency" as a situation in which the defendant corporation actually conducts business in the county of suit in a more or less permanent form. They consider a "representative" as a situation in which a party possessing broad powers from the defendant corporation resides in the county of suit. *See, e.g., Beef*

*Cattle Co. v. Scott*, 613 S.W.2d 318, 322–23 (Tex.Civ.App.—Amarillo 1981, no writ); *Crosby v. Safeway Stores, Inc.*, 568 S.W.2d 412, 413 (Tex.Civ.App.—Texarkana 1978, writ dism'd); *Cotton Concentration Co. v. A. Lassberg & Co.*, 433 S.W.2d 736, 739–40 (Tex. Civ.App.—Eastland 1968, no writ).

Other cases, however, have utilized a single standard generally requiring that the corporate defendant have a servant or agent in the county of suit whose duties and obligations are not merely matters of manual or mechanical execution but are discretionary and relate to commercial or business transactions concerning the corporate affairs of the defendant. *See, e.g., Rouse v. Shell Oil Co.*, 577 S.W.2d 787, 789–90 (Tex.Civ.App.—Corpus Christi 1979, writ dism'd); *South Texas Icee Corp. v. John E. Mitchell Co.*, 449 S.W.2d 786, 788 (Tex.Civ.App.—Corpus Christi 1969, writ dism'd). *See generally* Clarence Guittard and John Tyler, *Revision of the Texas Venue Statute: A Reform Long Overdue*, 32 BAYLOR L.REV. 561, 573–74 (1980).

## II.

I would reaffirm our holding in *Milligan* that there are two independent standards for determining whether venue is proper in a certain county under the "agency or representative" provisions of the venue statute. *Milligan* sets out two situations in which a corporate presence may subject a foreign corporation to venue in a particular county under section 15.037. First, if a foreign corporation has an officer or employee with discretionary powers that can be exercised on behalf of the corporation and that are not merely matters of manual or mechanical execution, the person is a "representative" for section 15.037 venue purposes. Second, if a foreign corporation has no officers or employees in the county of suit, but has another person or entity that performs those same functions by regularly and (more or less) permanently transacting the corporation's business in the county, that person or entity is an "agency" for section 15.037 venue purposes. In reality, whether this constitutes two independent standards or a single standard is immaterial.

The scope of "agency" or "representative" has been described as follows:

> As a general rule, an "agency" or "representative" within the meaning of Subdivision 27 [the predecessor to section 15.037] must be more than a mere servant. His duties and obligations must relate to commercial or business transactions having something to do with the corporate affairs of the principal, and must be more than matters of manual or mechanical execution. The term connotes some discretionary power conferred upon the employee.

*Rouse v. Shell Oil Co.*, 577 S.W.2d at 789; *South Texas Icee Corp. v. John E. Mitchell Co.*, 449 S.W.2d at 788. However, a question exists concerning the character of discretionary power necessary to constitute an "agency" or "representative" for section 15.037 venue purposes. Concerning "representative," *Milligan* described a situation "in which a party possessing broad powers from the defendant resides in the county...." *Milligan*, 250 S.W.2d at 198. *See generally Clearwater Constructors, Inc. v. Gutierrez*, 626 S.W.2d 789, 793–94 (Tex.Civ.App.—San Antonio 1981, no writ). However, *Milligan* described the "limits" of discretionary power as between a mere servant who does not have the necessary discretionary power ("for example, a salaried employee to clean out dirty trailers") and an agent with the express power to contract for its principal ("the power to contract for the principal ... and its regular use in the very name of the principal as the contracting party are certainly the strongest indication that the principal is doing business through an agency"). *Id.* at 197–98. Most courts of appeal state that "agency" or "representative" "connotes some discretionary power conferred upon the employee." *Rouse v. Shell Oil Co.*, 577 S.W.2d at 789; *South Texas Icee Corp. v. John E. Mitchell Co.*, 449 S.W.2d at 788; *General Motors Corp. v. Brady*, 477 S.W.2d 385, 391 (Tex.Civ.App.—Tyler 1972, no writ); *Amoco Prod. Co. v. Mayer*, 540 S.W.2d 353, 356 (Tex.Civ.App.—Beaumont 1976, writ dism'd) ("the person has discretionary power"); *Colorado Interstate Gas Co. v. MAPCO, Inc.*, 570 S.W.2d 164, 170 (Tex.Civ.App.—Amarillo 1978, no writ); *Delhi Gas Pipeline Corp. v. Lamb*, 610 S.W.2d 210, 212 (Tex.Civ.App.—El Paso 1980, writ dism'd). *See generally Mid–Continent Life Ins. Co. v. Huston*, 481 S.W.2d 943, 945 (Tex.Civ.App.—Houston [1st Dist.] 1972, writ dism'd). Several courts of appeal state that the "essential distinction [between a mere servant and an "agent or representative"] is that the agent or representative be engaged by his principal to perform the contractual relationship with some discretion that can bind his principal and a third party." *South Texas Icee Corp. v. John E. Mitchell Co.*, 449 S.W.2d at 788; *Allis–Chalmers Mfg. Co. v. Coplin*, 445 S.W.2d 627, 628 (Tex.Civ.App.—Texarkana 1969, no writ); *Colorado Interstate Gas Co. v. MAPCO, Inc.*, 570 S.W.2d at 170; *General Motors Corp. v. Brady*, 477 S.W.2d at 391. The commentators also are divided on this question. *See* 3 William Dorsaneo III, TEXAS LITIGATION GUIDE § 61.03[2][b], at 61–35 (1992) ("It is clear that an agent or representative must be shown to have discretionary power."); 2 MCDONALD TEXAS CIVIL PRACTICE § 6:20, at 48 (1992) (The term agency or representative "relates to commercial or business transactions, something to do with the corporate affairs of the principal other than matters of manual or mechanical execution. The term connotes some discretionary power...." (quoting *Brazos River Transmission Elec. Cooperative v. Vilbig*, 244 S.W.2d 266, 268 (Tex.Civ.App.—Dallas 1951, no writ)); Clarence Guittard and John Tyler, *Revision of the Texas Venue Statute: A Reform Long Overdue*, 32 BAYLOR L.REV. 561, 572 (1980) ("The test seems to be whether the 'agency or representative' has broad discretionary power to act for the corporation so that it may be said to have a continuing presence in the county of suit.").

The court of appeals' discussion of "agency" or "representative" venue is indicative of the confusion. In determining that venue was improper in Starr County, the court of appeals described the standard or test as follows:

> *Milligan* clearly restricts the parameters of an "agency" determination to circumstances in which "agent" has broad powers or authority to do the company's business. "Agency" as defined in *Milligan* is more

than merely doing business in a particular county. The ordering of supplies or materials in a particular county is not considered as creating an "agency" or "representative," unless the person ordering the same is clothed with *broad powers.*

818 S.W.2d at 124 (emphasis in original). The court of appeals also stated that "the employee, in order to be an 'agent' or 'representative' of the employer for the purpose of venue, must be a resident of the county where suit was filed on the date that suit was filed, unless the business of the defendant/employer 'is, in more or less regular and permanent form, actually conducted in the county of suit.'" *Id.* at 127 (quoting *Milligan,* 250 S.W.2d at 198). Essentially, the court of appeals utilized a single standard concerning "agency" or "representative" which generally required that the corporate defendant have an employee residing in the county of suit whose duties and obligations included broad discretionary powers.

### III.

Other courts of appeal are indicative of the range of discretionary power necessary to constitute an "agency" or "representative" for section 15.037 venue purposes. In *Pan American Petroleum Corp. v. Vines,* 422 S.W.2d 764 (Tex.Civ.App.—Waco 1968, writ dism'd), the court of appeals considered whether an employee of Pan American Petroleum was an "agency or representative" for venue purposes. The employee was in charge of all operations of Pan American Petroleum in the county including the producing of wells, the keeping of records, and the firing of other employees. The employee was also in charge of a processing plant in the county. The court held that the employee was an "agency or representative" because the employee's "position was permanent in its character, and the business operated by him was an extensive operation, valuable to defendant, and covered broad powers in carrying on defendant's business in Van Zandt County." *Id.* at 765. In *Colorado Interstate Gas Co. v. MAPCO, Inc.,* 570 S.W.2d 164 (Tex.Civ.App.—Amarillo 1978, no

writ), the court of appeals considered whether an employee of Colorado Interstate Gas was an "agency or representative" for venue purposes and held that no "agency or representative" existed. "[T]here is no direct evidence that any supervisor does, or has the discretionary power to, contract or otherwise bring about any business relationship between CIG [Colorado Interstate Gas] and third parties." *Id.* at 170. "[A]ll decisions relative to the preparation of the budget, the hiring and firing of personnel, the purchase of material of any significant amount, the gas pressure required for operations, the quantity and quality of natural gas transported, the sale of liquids extracted at the local plants, and the maintenance programs are made in Colorado." *Id.* at 171.

In *Mobil Oil Corp. v. Cook,* 494 S.W.2d 926 (Tex.Civ.App.—Amarillo 1973, no writ), the court of appeals considered whether an employee of Mobil Oil was an "agency or representative" for venue purposes. Mobil Oil had a field office with employees "who had authority to make contracts for pulling and working over pumps, repairing pumps, purchasing supplies and other matters concerning production of oil and gas from wells owned by Mobil, although there were limits of $1,000 and $5,000 for which they could contractually bind Mobil." *Id.* at 932–33. The court held that the employee was an "agency or representative" because the employee, "with certain limitations, had authority to bind the corporation contractually with third parties in matters pertaining to the production of petroleum, and had considerable responsibilities relating to the company's commercial and business transactions not normally associated with a mere employer-servant relationship." *Id.* at 933. In *Champlin Petroleum Co. v. Heinz,* 665 S.W.2d 544 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.), the court of appeals held that two Champlin employees—who took care of the production from the gas wells including performing mechanical repairs, adjusting flow rates, servicing the compressors and preparing production reports—were not an "agency or representative" for venue purposes.

In *Delhi Gas Pipeline Corp. v. Lamb,* 610 S.W.2d 210 (Tex.Civ.App.—El Paso 1980, writ dism'd), Delhi's employee was responsible for finding producers with gas for sale, acquiring well data and sending it to Dallas for evaluation, submitting offers to buy gas, making limited changes to offers and negotiating the purchase price within limits set by Delhi. However, the employee did not have discretion to bind Delhi and all contracts were executed in Dallas. The court of appeals held that the employee was an "agency or representative" because the employee's duties "called for the exercise of judgment and discretion to the extent that he was actually engaged in the conduct of business of the corporation." *Id.* at 213. In *Amoco Prod. Co. v. Mayer,* 540 S.W.2d 353 (Tex.Civ. App.—Beaumont 1976, writ dism'd), there was evidence that Amoco personnel were present at times in the county and that Amoco signs were erected on the land in question. The court of appeals held that the employee was not an "agency or representative" because "none of the testimony identifies any individual as having the kind of discretionary power required by the cases [*Milligan* and others]...." *Id.* at 356. In *Clearwater Constructors, Inc. v. Gutierrez,* 626 S.W.2d 789 (Tex.Civ.App.—San Antonio 1981, no writ), a contract between Clearwater Constructors and the Corps of Engineers required Clearwater to have a superintendent on the site with authority to act for Clearwater and Clearwater's superintendent used a trailer at the site as his office. The court of appeals held that the employee was not an "agency or representative" because "the evidence does not indicate the nature of duties of ... [the superintendent]" and "there is no evidence that the job site superintendent ... possessed 'broad powers from the defendant.'" *Id.* at 793. "In the absence of such evidence, it cannot be said that plaintiff established the presence of anyone in Bexar County meeting the *Milligan* test concerning 'broad power.'" *Id.* at 793–94.

## IV.

I would conclude that venue was proper in Starr County because there is some evidence that Conoco had a "representative" in Starr County for section 15.037 venue purposes. Since the production foreman is an employee, we should consider whether he is a "representative" of Conoco—in other words, whether he has discretionary powers that can be exercised on behalf of the corporation. My review of the record indicates that Conoco has operated production facilities in Starr County since 1940. These facilities included approximately fifty wells and an office at the Rincon Field, at which five people were permanently employed including the production foreman. The production foreman's authority and duties included final approval authority on invoices subject to a monetary limitation, authority to order parts and services for Conoco within the limitation, supervision of the Rincon Field, and authority to determine whether maintenance was or was not done on the wells. Among other things, the production foreman's job description stated as follows:

The Production Foreman is accountable for directing daily operations for the assigned area. The incumbent conducts morning and afternoon meetings with subordinates to 1) establish priorities, 2) review and solve operational problems, 3) communicate and plan work, 4) coordinate activities, 5) emphasize safety and 6) provide guidance. The incumbent frequently visits all facilities to inspect for safe working habits and conditions and to insure the operations meet Conoco's high standards for compliance, safety, housekeeping and productivity. The Production Foreman monitors downtime, well tests, and various other reports to identify, analyze and solve problems for production increases. The incumbent directs the implementation of improvement measures.

\* \* \* \* \* \*

The Production Foreman has the authority to change job assignments of direct subordinates as long as those changes do not involve transfers or promotions/demotions. The incumbent may establish work schedules and authorize overtime. The foreman

also has authority to transfer equipment within the assigned area and to select vendors, service companies and contractors to perform company work.

There is no question that the production foreman is more than a mere employee and his duties involve more than just matters of manual or mechanical execution. It is equally clear that Conoco has conferred "some discretionary power" upon the production foreman that can be exercised on behalf of the corporation. He had final approval authority on invoices subject to a monetary limitation, authority to order parts and services for Conoco within the limitation, authority to change job assignments of direct subordinates, and authority to select vendors, service companies and contractors to perform company work. This constitutes some evidence (however meager) that Conoco had a "representative" in Starr County for section 15.037 venue purposes.

In its efforts to reach its desired result, the Court states: "While he [the production foreman] did possess a small measure of discretion, he lacked all of the authority of the independent contractor we consider in *Milligan*." 868 S.W.2d at 759. Apparently in determining whether a person or entity is an "agency" or "representative" for section 15.037 venue purposes, the person or entity must have all of the authority of the independent contractor in *Milligan*. In addition, the Court states that "Starr County has nothing to do with this litigation." 868 S.W.2d at 759. However, Harris County, where the Court is transferring this cause, also has nothing to do with this litigation other than being the location of Conoco's principal office. In reality, Conoco is forum shopping by seeking to transfer the cause to Harris County. By focusing on its desired result and the perceived evils of forum shopping, the Court has further muddled this already confused area of Texas jurisprudence. By doing so, this Court does a great disservice to the litigants whom we serve and injects an element of uncertainty into every determination of whether a person or entity is an "agency" or "representative" for section 15.037 venue purposes.

For reasons explained herein, I would affirm that portion of the judgment of the court of appeals holding that Javier Ruiz's suit was not barred by limitations and reverse that portion of the judgment holding that venue was not proper in Starr County and render judgment that venue was proper in Starr County.

DOGGETT, GAMMAGE and SPECTOR, JJ., join in this opinion.

## APPENDIX

### Feb. 9, 1994.

A separate supplemental dissenting opinion by JUSTICE DOGGETT impugns the manner in which the Court has decided this case on motion for rehearing, and criticizes the Court for delaying its ruling on that motion. While we do not wish these criticisms to go unanswered, we also do not wish to be drawn into the polemic that is the separate Justice's regular and distinctive style. To avoid cluttering the Court's opinion with such matters that have nothing to do with the issues decided, we respond to the separate opinion in this Appendix.

There is nothing in the least irregular in the manner in which the Court has handled respondent's motion for rehearing in this case. The original opinion and the opinion and dissent on rehearing represent considered views of the legal issues in this case about which there is sincere disagreement.

The separate supplemental dissent accuses the Court of calculated delay in deciding this case and *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489 (Tex.1992). The latter case has nothing to do with this one. The accusation is false, unfounded railing.

DOGGETT, Justice, dissenting on motion for rehearing.

While continuing to join fully with the previous dissent on respondent's motion for

rehearing filed by Justice Hightower, I write briefly to record the circumstances underlying the disposition of this cause.

Application for Writ of Error in this cause was filed on December 20, 1991 and oral argument was presented on April 28, 1992. Following full and complete deliberation over an extended period of time, the Court issued an opinion written by Justice Hightower on December 31, 1992, which was joined by six other members of the Court, while Justices Hecht and Gonzalez noted their dissent with an opinion to follow. This dissent was never filed, but on March 22, 1993, an amicus brief was received from the Texas Association of Business, the Texas Chemical Council, the Texas Mid–Continent Oil and Gas Association. On September 29, 1993, a new opinion written by Justice Hecht and joined by four members of the Court was issued, which changed the result and to which four members of the Court dissented in an opinion by Justice Hightower. The petitioner's motion for rehearing captures the essence of what occurred here:

> When an opinion from the Supreme Court is issued some eight months after submission and a 7–2 decision transforms nine months later into a 5–4 reversal of the earlier opinion, casual observers of the judicial process would conclude that something significant occurred in the jurisprudence in the intervening period. What intervened was the arrival of two new judges to the Texas Supreme Court and the filing of an hysterical amicus brief by business lobbyists that apparently induced two members of the Court to switch votes.

> Despite nine months of presumed deliberation on the motion for rehearing, this Court's majority opinion contributes nothing but confusion to the Texas jurisprudence while arriving at a result that is largely achieved by manipulation of the record.

One would hope that such circumstances would be extraordinary; unfortunately, they have become an all too ordinary way of considering matters at this Court. As earlier noted in *Havner v. E–Z Mart,* 846 S.W.2d 286, 287 (Tex.1993) (Doggett, J., dissenting to order denying application for writ of error as improvidently granted), in which I expressed concern about the improvident granting of several cases that had been granted in December 1992, without ever according the parties involved an opportunity to present oral argument:

> During this time, the law did not change, nor did the importance of the legal issues at stake diminish.

> Remarkable as this may be, it surely comes as no surprise to those who have closely observed recent opinions of this Court reflecting a growing tendency of the majority to overrule past decisional law. Those who rely on Texas Supreme Court decisions as precedent do so increasingly at their peril.

The opinion of the majority on rehearing is also indicative of another disturbing trend— the willingness of the majority to allege it is relying upon a prior judicial decision when, in truth, the facts of the prior case could not pass muster under the reconstituted test that the majority announces. Such was the situation in *Delaney v. University of Houston,* 835 S.W.2d 56, 61–64 (Tex.1992) (Doggett, J., concurring), in which I objected to the majority's seventeen-month delay following oral argument to resolve a claim set forth in a record composed of a three and one-half page affidavit of a rape victim. There the majority was not at all bothered by adopting a test which, when applied to the facts of the prior authority upon which it relied, would have produced an opposite result. *See also C & H Nationwide v. Thompson,* 1993 WL 483450, 37 Tex.Sup.Ct.J. 149, 163–64 (Tex.1993) (Doggett, J., dissenting).

Here the controlling authority is *Milligan v. Southern Express, Inc.,* 151 Tex. 315, 250 S.W.2d 194 (1952). As Justice Hightower has already noted, the majority's opinion on motion for rehearing "effectively overrules *Milligan.*" 868 S.W.2d at 760 (Hightower, J., dissenting on motion for rehearing). Since the majority refused to respond or

explain itself on this point, petitioner's motion for rehearing quite appropriately notes:

Clearly, if *Milligan* is good law, then the Court's majority opinion is not. If *Milligan* is overruled, the Court should say so. If traditional rules of legislative construction should be abandoned, then tell us what the new rules are. The bench and the bar are entitled to at least that.

As in *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489 (Tex.1992), not all of the delay which occurs at this Court is the product of neglect; some is very calculated. Such is the case here.