ACCEPTED
06-14-00102-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/6/2015 5:44:37 PM
DEBBIE AUTREY
CLERK

_____

CAUSE NO. 06-14-00102-CV

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

5/6/2015 5:44:37 PM

DEBBIE AUTREY
Clerk

_____

IN THE SIXTH COURT OF APPEALS
TEXARKANA, TEXAS

_____


JOHNNY E. WEBB, III
Appellant,


v.


ALEX RODRIGUEZ, CESAR GARCIA, DIVERSEGY, LLC,
LUCIEN J. TUJAGUE, JR., DOMINION GAS HOLDINGS, LP,
NICHOLAS GALLAGHER, IDT ENERGY, INC.,
AND SHUK HOLDINGS, LLC
Appellees.

_____


Appeal from Cause No. DC-14-09393
95th Judicial District Court of Dallas County, Texas
Hon. Judge Ken Molberg, Presiding

_____


**REPLY BRIEF OF APPELLANT**
_____


Melvin Houston
Melvin Houston & Associates
Yorktown Building
1776 Yorktown, Suite 350
Houston, TX  77056
(713) 212-0600
mhouston@gotellmel.com

Darrell J. O'Neal
Law Office of Darrell J. O'Neal
2129 Winchester Road
Memphis, TN 38116
(901) 345-8009 office
(901) 345-8014 fax
domemphislaw@aol.com


1

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................2

**TABLE OF AUTHORITIES** ..........................................................................2

**INTRODUCTION**.........................................................................................3

**I.   MISSTATEMENT OF KEY FACTS BY APPELLEES** .............................4

**II.   ARGUMENT** ........................................................................................7

    APPELLATE REVIEW OF A VENUE DETERMINATION IS EXTENDED TO WHETHER
THE VENUE ISSUE WAS IN FACT PROPERLY DECIDED BASED UPON THE ENTIRE
RECORD IN THE TRIAL COURT. ...................................................................7

**III.   CONCLUSION** ...................................................................................11

**CERTIFICATE OF COMPLIANCE** ..............................................................12

**CERTIFICATE OF SERVICE** ......................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Ruiz v. Conoco, Inc*., 868, SW 2d 752, 757 (1993) ............................................2, 7

**Rules**

Tex. R. Civ. P. 87…………………………………………………………….8

## INTRODUCTION

This appeal is about whether the trial court erred in granting Defendants' motion to transfer venue, or alternative motion to dismiss, based on an unenforceable forum or venue selection clause. Appellant argued that the agreement relied upon by the Appellees was not enforceable against him because his signature on the agreement was merely a replica placed there deceptively without his knowledge or permission. Appellees' refused or were unable to produce the original agreement and Mr. Webb presented evidence that the copy presented to the court did not contain his original signature.

In support of this appeal, Appellant relies upon *Ruiz v. Conoco* which held that the entire record must be reviewed as a whole, including rebuttal evidence, when reviewing a venue determination by the trial court. 868 S.W.2d 752, 757-758 (Tex. 1993). The Appellees' brief ignores this holding of *Ruiz* altogether, despite its reliance upon *Ruiz* in the lower court.

Appellees' argument in its response brief all but contradicts their main argument before the trial court below. Appellees simply cannot have it both ways. Below, Appellees argued that Webb could not present rebuttal proof in response to their purported *prima facie* case. Here, in their response brief, Appellees argue Webb waived any right to present rebuttal proof. p. 9, ¶ 3; p. 29-30. During the hearing on the motion to transfer, Appellees argued:

3

MR. JOHANSEN:…And those three affidavits attesting to the fact that Mr. Webb signed the UPA in their presence is sufficient to meet that prima facie standard. And as the Court, I assume, is also very well-aware, the Texas Supreme Court has said prima facie proof is not subject to rebuttal, disproof, impeachment or cross-examination.

So once we have established that prima facie proof, *which those affidavits provide*, that's sufficient, and this case must be either transferred in some fashion up to New Jersey or dismissed after giving Mr. Webb an opportunity to refile in New Jersey…

R.R. Vol.3, 11:12-23. Having argued before the trial court Appellant could not rebut, disprove, impeach, or cross-examine their proof as presented, Appellees now have the nerve to argue he (Webb) missed his chance. There is no case law that requires such a *Machiavellian* or chess-like approach. In fact, the law is crystal clear. These types of tactics are shunned in a court of law and represent improper gamesmanship that this Court should not countenance.

## I.    MISSTATEMENT OF KEY FACTS BY APPELLEES

While Appellee took great liberties with its factual statement making several misstatements, Appellant will address only those relevant and key factual misstatements critical to the issues presented in this appeal. In Appellee's first factual misstatement it is asserted that Webb sold his membership interest in Diversegy to Shuk pursuant to a Unit Purchase Agreement ("UPA"). Appellees' Response Brief, p. 4, ¶ 1. This is a misstatement because Appellant did not sign the UPA, and did not knowingly or voluntarily sell his membership interest in Diversegy pursuant to the UPA. As stated in the sworn Amended Petition, Mr. Webb did not

4

even see the UPA until it was given to him by counsel for Defendant IDT *after* the closing of the sale. C.R. 156, ¶40.

In Appellee's second misstatement, it is asserted that $2 million was paid for the Diversergy membership interests, but the last payment has yet to be made. Appellees Response Brief, p. 4, ¶ 1. According to the UPA the final payment of $416,000 is to be made on the 18th month anniversary of the closing, which would be on or about June 4, 2015. CR 30, § 4.1(d). It is important to note here that Webb sought the TRO so that information would not be secreted or destroyed, but also to abate the final consummation of the sale with the intent of preserving his interests. C.R. 142, 153.

Lastly, in a third misstatement of the facts, Appellees' rely heavily on the assertion that Webb identified himself as a seller and that "*all* of his alleged causes of action relate to his position as a seller under the UPA". Appellees Response Brief, p. 4, ¶ 2 (Emphasis added). This particular misstatement is important to correct because Appellees' attempt to disguise the fact that Webb identified himself as a seller *because* of the sale of his company, not because he is in fact a seller as legally termed under the UPA. In fact, the issue of whether Webb is bound to the UPA as a seller, or otherwise, is but one issue to be litigated because of Appellees' unauthorized use of Webb's signature, i.e. forgery. Webb referencing himself as a seller does not diminish the merit of his suit against Appellees for breach of

5

contract[1], fraud, breach of fiduciary duties and conversion. As stated in the Amended Petition, "[T]his lawsuit is about three sellers who colluded and conspired to sell an insolvent company to cover their own debts while converting monies that were owed to other sellers, brokers, and vendors to include the Plaintiff." C.R. 158, ¶ 12.

Most notably, Webb identified himself as a debtor with the right to payment, irrespective of the UPA. In fact, Webb references the debt owed to him as a debt owed **prior** to the sale of the company, more than fifteen times in his verified Amended Petition.[2] C.R. 156, ¶¶ 30, 32, 33, 35, 36, 41-45, 47-49, 54-60, 63, 65, 66[3]. Webb also identified himself as an owner of Diversegy with the right to access

---

[1] Webb's breach of contract claim includes a breach of the Diversegy Operating Agreement. Para. 63 states, "The Defendant Sellers breached the Diversegy Operating Agreement (Exhibit 2) when they colluded and conspired to sell the company solely to cover their own debt, with knowledge that the purchase price would not cover all debts owed by the company. (§§4.5 and Art. VI)." (See other paragraphs in Count 2, Breach of Contract, that reference other violations of the Operating Agreement.) C.R.164.

[2] The debt owed to Webb arises as a separate claim unrelated to the UPA because it was owed before the sale of the company. Whether the UPA deprived Mr. Webb of his right to payment for that debt because of the forged and unauthorized use of his signature is another issue that should be litigated in Dallas County.

[3] Regarding Webb as a debtor, some of the allegations by Webb in his verified Amended Petition state in part: "Defendant Sellers have refused to pay Plaintiff any of the debt owed to him…" ¶30; "Defendant Sellers concealed over $250,000.00 in debts owed to Plaintiff, and thousands of dollars owed to former brokers, consultants and vendors…" ¶32; "The debt to Plaintiff was owed before the acquisition and purchase of Diversegy." ¶33; "Defendant Sellers have refused demands for payment of these debts despite repeated demands for payment." ¶35; "Defendant Sellers have refused to provide an accounting of the total debt concealed." ¶36; "Defendant Sellers misrepresented material facts concerning the debts and liabilities of Diversegy, namely the total amount of debts owed by Diversegy and debts owed to the Plaintiff." ¶41; "Defendant Sellers colluded to hide the debts of Diversegy in order to give the appearance of increased value." ¶42;

6

the accounts and books of the company in connection with the company's Operating Agreement. C.R. 161, ¶ 38. Likewise and equally important for purposes of this appeal, Webb identified himself as a resident of Dallas County with the right to have his case heard in a Texas court. C.R. 156. In fact, all of the parties identified either reside in or do business in Texas or particularly Dallas County. C.R. 156-158, 263-270.

## II. ARGUMENT

**APPELLATE REVIEW OF A VENUE DETERMINATION IS EXTENDED TO WHETHER THE VENUE ISSUE WAS IN FACT PROPERLY DECIDED BASED UPON THE ENTIRE RECORD IN THE TRIAL COURT.**

Appellees' purported *prima facie* proof is misleading and wrong, requiring a reversal in this case. "…in reviewing the trial court's decision, an appellate court must reverse (there cannot be harmless error) if other evidence in the record, even evidence adduced after venue was determined, destroys the prima facie proof on which the trial court relied." *Ruiz v. Conoco, Inc.*, 868, SW 2d 752, 757 (1993). According to Appellees, they established their *prima facie* case by the evidence of

---

"Based on information and belief, the concealment of debts by Defendant Sellers was done fraudulently and deceptively, converting the owed debts to assets to increase the valuation of the company." ¶45; "There is also reason to believe that the Defendant Sellers also face potential insolvency. Defendant Sellers borrowed monies before the sale of the company in excess of $1.6 million. They borrowed against the company and also took out personal loans. These loans did not cover any payments for the debt owed to Plaintiff." ¶47; "While Plaintiff can identify approximately $250,000 owed to him, the actual amount owed to him may exceed over $400,000." ¶48. C.R. 156.

affidavits filed in support of their reply brief and Webb could not rebut it. During the hearing on the motion to transfer, the following exchange took place:

> MR. JOHANSEN: …And those three affidavits attesting to the fact that Mr. Webb signed the UPA in their presence is sufficient to meet that prima facie standard. And as the Court, I assume, is also very well-aware, the Texas Supreme Court has said prima facie proof is not subject to rebuttal, disproof, impeachment or cross-examination.
>
> So once we have established that prima facie proof, *which those affidavits provide*, that's sufficient, and this case must be either transferred in some fashion up to New Jersey or dismissed after giving Mr. Webb an opportunity to refile in New Jersey…
>
> …
>
> THE COURT: What -- I'm captured under the major transaction statute. You really think that --you're saying that you can make a prima facie showing and that the other side can't do anything about it and –
>
> MR. JOHANSEN: The Ruiz versus Conoco case from 1993 from the Texas Supreme Court -- and I have a copy of it with me...

R.R. Vol.3, 11:12-23; 12:12-18 (emphasis added). Appellant agrees with Appellees to the extent that *Ruiz* now controls. The record must be reviewed as a whole, including rebuttal evidence, requiring reversal where the affidavits presented by Appellees' were presented the day of the hearing, and shown to be wrong and misleading.

> In deciding a motion to transfer venue, the trial court is required by Rule 87, TEX.R.CIV.P., to take as true those facts of which *prima facie* proof is made by the party with the burden of such proof; yet in reviewing the trial court's decision, an appellate court must reverse (there cannot be harmless error) if other evidence in the record, even evidence adduced after venue was determined,

8

destroys the prima facie proof on which the trial court relied. Prima facie proof is not subject to rebuttal, cross-examination, impeachment or even disproof. **The evidence as a whole may well show that prima facie proof was misleading or wrong.** But while the wisdom of the statute may be challenged, there is no misunderstanding its plain language: an appellate court is obliged to conduct an independent review of the entire record to determine whether venue was proper in the ultimate county of suit. *See* Price, *supra,* at 878-79.

868 S.W.2d 752, 757-758 (Tex. 1993)(emphasis added). Very simply, a review of the record in its entirety shows that Appellees' purported *prima facie* proof is misleading and wrong and therefore Appellees' motion to dismiss relying solely on the forum-selection clause should have failed in light of the proof putting at issue the validity and enforceability of the purchase agreement. What was that proof that destroyed Appellees' prima facie proof and showed it to be wrong and misleading?

First, proof presented by Appellees' showed that at least two signatures on the UPA agreement were not originals:

> THE COURT: But *the other one I noticed* that I didn't feel anything on the back was right above Mr. Webb, Cesar Garcia.
>
> MR. O'NEAL: He wasn't there at his signature signing.

R.R. Vol.3, 26:11-15. (Emphasis added). The court acknowledged that in addition to Mr. Webb's signature, he did not feel the signature indentation for Cesar Garcia. Garcia did not attend the mysterious alleged signing party, but interestingly the Appellees' did not present an affidavit by Cesar Garcia. C.R. 363 ¶ 3. The judicial notice by the court indisputably establishes that the purported *prima facie* proof of

9

Appellees attempting to show that Webb was bound by the UPA was wrong and misleading. Therefore, according to Ruiz, this court should reverse.

Moreover, the sworn petition of Webb sets forth additional proof that Appellees' *prima facie* proof was wrong and misleading. Summarily, Webb averred that Appellees' concealed details regarding the sale of the company and the UPA. As well, Webb averred that Appellees' deceitfully sold his interests without authorization. He alleged fraud, conversion and numerous facts that defeated the enforceability of the UPA as to him.[4]

Without question, other evidence in the record, even evidence adduced after venue was determined, destroys the *prima facie* proof on which the trial court relied. The evidence adduced after venue was determined included:

1) an expert affidavit by a document examiner that established the signature page of the UPA presented to the trial court contained a signature that appeared to deviate from Plaintiff's signature on other documents, C.R. 436-438, ¶ 7;

2) an affidavit by seller Fernando Campos that averred there was never a signing party and he never witnessed Appellant sign the UPA directly controverting the affidavits presented by Appellees, C.R. 435; and

---

[4] Appellant refers the court back to footnote 2 which provides some of the specific averments challenging Appellees' prima facie proof that the UPA is enforceable against Appellant.

10

3) the affidavit of the Appellant affirming again his sworn petition and that he never attended a signing party, did not sign the UPA and never authorized the use of his signature. C.R. 431-433.

All of this evidence destroys the *prima facie* proof upon which the trial court relied. Consequently, venue is proper in Dallas County and this matter should be remanded to the trial court for further proceedings.

## III. CONCLUSION

For these reasons, and those argued in Appellant's opening brief, this Court should vacate the grant of the motion to transfer venue, reverse the dismissal and remand for further proceedings.

Respectfully submitted,

**/s/ Darrell J. O'Neal**
Darrell J. O'Neal
Law Office of Darrell J. O'Neal
TN State Bar No 20927
2129 Winchester Road
Memphis, TN 38116
(901) 345-8009 office
(901) 345-8014 fax
domemphislaw@aol.com

**/s/ Melvin Houston**
Melvin Houston
Melvin Houston & Associates
TX State Bar No. 00796559.
1776 Yorktown, Suite 350
Houston, TX 77056
Tel: (713) 212-0600

Fax: (713) 212-0290
mhouston@gotellmel.com
COUNSEL FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 2378  words (excluding the caption, table of contents, table of authorities, signature, proof of service, and certificates). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

Respectfully submitted,

**/s/ Melvin Houston**
**/s/  Darrell J. O'Neal**

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the above and foregoing Appellant's Reply Brief via this court's electronic filing system pursuant to T.R.AP. Rule 9 upon the following on May 6, 2015:

Andrew K. York
Jim Moseley
Gray Reed & McGraw

1601 Elm Street, Suite 4600
Dallas, TX 75201
(201) 654-4135
(214) 953-1332 fax
dyork@grayreed.com
jmoseley@grayreed.com
Counsel for Lucien Tujague, Jr. and
Dominion Gas Holdings LP

Bryan Stevens
Barrett Lesher
Hallet & Perrin PC
1445 Ross Avenue, Ste 2400
Dallas, TX 75202
BStevens@hallettperrin.com
blesher@halletperrin.com
Counsel for Diversegy, LLC, Shuk Holdings LLC and
IDT Energy Inc

Mark J. Johansen
Rafeal C. Rodriguez
Gruber Hurst Johansen Hail Shank LLP
1445 Ross Avenue, Ste 2500
Dallas, TX 75202
mjohansen@ghjhlaw.com
rrodriquez@ghjhlaw.com
Counsel for Alex Rodriguez

**/s/ Melvin Houston**
**/s/  Darrell J. O'Neal**