COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-202-CV

 

MIRTHA GARZA,
INDIVIDUALLY                                                    APPELLANT

AND AS REPRESENTATIVE OF

THE ESTATE OF ISIDRO 

REYES, III

 

   V.

 

STATE AND COUNTY MUTUAL                                                      APPELLEE

FIRE INSURANCE COMPANY

 

                                              ------------

 

           FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------      








Appellant
Mirtha Garza, individually and as representative of the estate of Isidro Reyes,
III, appeals an order transferring venue from Starr County to Tarrant County
and a subsequent order granting summary judgment in favor of Appellee, State
and County Mutual Fire Insurance Company (AState
and County@).  Because there is probative evidence
supporting the Starr County trial court's transfer of venue to Tarrant County,
and because State and County conclusively negated an element of Garza's fraud
claim, we will affirm.

I.  Factual and
Procedural Background

In 2002,
Jose Mascorro crashed his vehicle into a child, Isidro Reyes, III, who was
riding a bicycle.  Reyes died as a result
of the accident.  The fatal accident
occurred in Starr County.  Jose Mascorro
had automobile liability coverage under two different insurance policies.  Both were State and County policies, but they
were administered by different managing general agencies.  The first State and County policy was
administered by Underwriters Managing General Agency (AUnderwriters@) and
had a policy limit of $20,013.  The
second State and County policy was administered by Wellington Financial
Services, Inc. (AWellington@) and
had a policy limit of $20,004.   








Shortly
after the collision, Mirtha Garza, the mother of Isidro Reyes, III, retained an
attorney who began to investigate whether any automobile  insurance policies existed covering Jose
Mascorro.  Garza=s
attorney soon discovered that Jose Mascorro, a State and County insured,
actually had two policies; Garza=s
attorney was not initially aware that the two policies were both issued by
State and County.   Consequently, Garza=s
attorney sent separate demand letters to Underwriters and Wellington demanding
that each of them tender their respective policy limits.  Both Underwriters and Wellington attempted to
settle their respective claims for each policy=s limit,
and were both initially unaware that the other was doing the same.  

An
adjuster for Underwriters sent Garza=s
attorney a letter advising him that Underwriters would tender $20,013 as a full
and final settlement of Garza=s
claim.  Approximately one month after the
Underwriters= tender, an adjuster for
Wellington also sent Garza=s
attorney a letter advising him that Wellington would tender $20,004 to settle
Garza=s
claim.  In response to both Underwriters= and
Wellington=s offers to settle her claims,
Garza=s
attorney sent letters to both Underwriters and Wellington, requesting that they
send the appropriate settlement documents so that Garza could resolve the
matter.  Underwriters and Wellington sent
Garza=s
attorney the proposed releases, but neither obtained a properly executed
release.[2]   








At some
point, State and County determined that two of its managing general agenciesCUnderwriters
and WellingtonCwere negotiating settlements for
two separately filed claims, both of which sought coverage for the same
event.  Consequently, State and County
retained a new attorney to prepare a release, which offered Garza $20,004 in
exchange for a full and final release of all claims against State and County,
including the two claims negotiated by Underwriters and Wellington.[3]  The full and final release reads as follows:

NOW THEREFORE, for and in
consideration of the receipt of the sum of Twenty Thousand Four and No/100
Dollars ($20,004.00), . . . Mirtha Garza, individually and as representative of
the estate of Isidro Reyes, III, . . . hereby ACQUIT, RELEASE and FOREVER
DISCHARGE . . . State and County Mutual Fire Insurance Company . . . and [its]
agents, . . . employees, servants, representatives, predecessors, successors, .
. . insurers, reinsurers, directors, officers, subsidiaries, . . .
shareholders, affiliates, and joint ventures . . . of and from any and all
claims, remedies, demands, . . . causes of action, or liabilities, including
but not limited to claims for wrongful death, . . . whether known or unknown,
accrued or unaccrued, or suspected or unsuspected . . . on account of, or
in any way growing out of, or which are subject of, the accident occurring on
or about March 23, 2002 . . . .

 

Upon
receipt of this proposed full and final release, Garza=s attorney
reviewed it, discussed it with Garza, had Garza sign it, and on June 11, 2003
faxed the signed version back to State and County=s
attorney.   








Approximately
one month later, another attorney retained by Underwriters sent Garza a second
release without knowing that Garza had already executed the aforementioned full
and final release covering both claims. 
This second release reflected the policy limit for the Underwriters= policyC$20,013.    Garza signed this second release on July
28, 2003.  On the same day, Garza
endorsed the settlement check for $20,004 from the first release, and her
attorney deposited the check in his IOLTA account.[4]  Garza never received the $20,013 amount
reflected in the second release. 

Consequently,
Garza filed a fraud claim against State and County in Starr County, Texas,
alleging that venue was proper in Starr County because Aall or
part of the cause of action arose in Starr County, Texas.@  State and County filed a motion to transfer
venue, arguing that the events giving rise to the fraud claimCthe
alleged fraudulent misrepresentationsCoccurred
in Tarrant County.  Garza subsequently
amended her original petition by adding Jose Mascorro as a defendant and
alleging that venue was proper in Starr County because Aall or
part of the cause of action arose in Starr County, Texas; and, Defendant Jose
A. Mascorro is a resident of Starr County, Texas.@  Aside from the amended petition, Garza did
not file a response to State and County=s motion
to transfer venue until three days before the Starr County court granted the
motion and transferred the fraud claim to Tarrant County.  








After
the transfer, State and County filed a traditional and no-evidence motion for
summary judgment.  See Tex. R. Civ. P. 166a(b), (i).  The Tarrant County court granted summary
judgment in favor of State and County, and Garza appealed to this court. 

II.  Venue
Proper in Tarrant County

In her
first issue, Garza contends that the Starr County court erred by granting State
and County=s motion to transfer venue to
Tarrant County because a substantial part of the events or omissions giving
rise to the fraud claim occurred in Starr County.  Specifically, Garza alleges that venue was
proper in Starr County because it is the county where the wreck occurred and
the county the parties to the wreck lived. 


A.  Standard of Review








In
reviewing a venue decision, the appellate court must conduct an independent
review of the entire record, including the trial on the merits if applicable,
to determine whether any probative evidence supports the trial judge's venue
decision. Tex. Civ. Prac. & Rem.Code
Ann. ' 15.064(b) (Vernon 2002); Chiriboga
v. State Farm Mut. Auto. Ins. Co., 96 S.W.3d 673, 677 (Tex. App.CAustin
2003, no pet.); see Wilson v. Tex. Parks & Wildlife Dep't, 886 S.W.2d
259, 261 (Tex. 1994). We review the evidentiary record in the light most
favorable to the venue ruling; however, no deference is given to the trial
court's application of the law. Chiriboga, 96 S.W.3d at 677‑78
(citing Ruiz v. Conoco, Inc., 868 S.W.2d 752, 758 (Tex. 1993)). If there
is any probative evidence in the entire record that venue was proper, we must
uphold the trial judge's ruling. Bonham State Bank v. Beadle, 907 S.W.2d
465, 471 (Tex. 1995); Ruiz, 868 S.W.2d at 758.   

B.  Venue Transfers








Venue
selection presupposes that the parties to the lawsuit have choices and
preferences about where their case will be tried.  Wilson, 886 S.W.2d at 260.  Because venue may be proper in numerous
counties, the plaintiff is given the first choice to fix venue in a proper
county and does so by filing suit in the county of her choosing.  Id.; Eddins v. Parker, 63
S.W.3d 15, 18 (Tex. App.CEl Paso 2001, pet. denied).  If a plaintiff files suit in an improper county,
she waives her first choice of venue, and the defendant may have the suit
transferred to another county, as long as venue is proper in that county.  Wilson, 866 S.W.2d at 260; WFTO,
Inc. v. Braithwaite, 899 S.W.2d 709, 716 (Tex. App.CDallas
1995, no writ); see also Tex.
Civ. Prac. & Rem. Code Ann. '
15.063(1) (Vernon 2002) (providing that trial court shall transfer action to
another county of proper venue if county in which action is pending is not a
proper county).  In such a case, the
defendant also must make prima facie proof that venue is maintainable in the
county to which transfer is sought.  Tex. R. Civ. P. 87(2)(a)‑(b),
(3)(a); Wilson, 886 S.W.2d at 260 n.1.

All
venue facts, when properly pleaded, shall be taken as true unless specifically
denied by the adverse party.  Tex. R. Civ. P. 87(3)(a).  If a defendant objects to the plaintiff's
venue choice and properly challenges that choice through a motion to transfer
venue, the question of proper venue is raised. 
Wichita County v. Hart, 917 S.W.2d 779, 781 (Tex. 1996); Wilson,
886 S.W.2d at 260‑61; see Tex. R. Civ. P. 86(3), 87(2)(b).  Once the defendant specifically denies the
pleaded venue facts, the burden is on the plaintiff to prove that venue is
maintainable in the county of suit.  Wilson,
886 S.W.2d at 261; see Tex. R.
Civ. P. 87(2)(a)‑(b).[5]








To meet
this burden, the plaintiff must make prima facie proof of the pleaded venue
facts that the defendant has denied.  Tex. R. Civ. P. 87(3)(a).  Prima facie proof is made when the venue
facts are properly pleaded and an affidavit and any duly proved attachments to
the affidavit fully and specifically setting forth the facts supporting such
pleading are filed.  Id.; WTFO,
899 S.W.2d at 715; see also Rodriguez v. Printone Color Corp., 982
S.W.2d 69, 72 (Tex. App.CHouston [1st Dist.] 1998, no
pet.) ("A prima facie case represents

the
minimum quantity of evidence necessary to support a rational inference that the
allegation of fact is true.").  The
affidavit must be made on personal knowledge, set forth specific facts as would
be admissible in evidence, and must show affirmatively that the affiant is
competent to testify.  Tex. R. Civ. P. 87(3)(a); WTFO,
899 S.W.2d at 715.








The
trial court shall determine the motion on the basis of the pleadings, the
parties' stipulations, and the affidavits and any proper attachments
thereto.  Tex. R. Civ. P. 87(2)(b), 88; Tex. Civ. Prac. & Rem. Code Ann. '
15.064(a); Eddins, 63 S.W.3d at 18. 
If the plaintiff adequately pleads and makes prima facie proof that
venue is proper in the county of suit, then the trial court must not transfer
the case.  Tex. R. Civ. P. 87(3)(c); see also Wilson, 886 S.W.2d
at 261 ("Together, Rule 87-3 (c) and section 15.063(1) require that a
lawsuit pleaded and proved to be filed in a county of proper venue may not be
transferred.").  In that situation,
no other county can be a proper county of venue, even if the county of transfer
also would have been proper if originally chosen by the plaintiff.  Wilson, 886 S.W.2d at 261; Jaska v.
Tex. Dep't of Protective & Regulatory Servs., 106 S.W.3d 907, 909‑10
(Tex. App.CDallas 2003, no pet.).  This rule gives effect to the plaintiff's
right to select a proper venue.  Wilson,
886 S.W.2d at 261.  But if a defendant
properly challenges venue and asserts venue facts, and the plaintiff never
specifically denies those venue facts, they are taken as true.  See Tex.
R. Civ. P. 87(3)(a); GeoChem Tech. Corp. v. Verseckes, 962 S.W.2d
541, 543 (Tex. 1998).  

C.  Probative Evidence that Transfer to Tarrant
County was Proper

To
properly determine whether the record demonstrates any probative evidence
supporting the venue transfer to Tarrant County, we must first understand the
nature of the claim.  As State and County
correctly indicates in its brief, the fraud claim made the subject of the venue
motion does not involve the wreck that occurred in Starr County.[6]  Accordingly, when reviewing the record to
determine if there is any probative evidence supporting the trial court=s
transfer of venue, we look to venue facts involving the alleged acts giving
rise to the fraud claim, not the alleged venue facts involving the wreck.  See Lynn Smith ChevroletCGEO,
Inc. v. Tidwell, 161 S.W.3d 738, 743-44 (Tex. App.CFort
Worth 2005, no pet.) (examining facts regarding location of repossession rather
than facts regarding location of contract formation in claim asserting wrongful
repossession).








State
and County properly challenged Garza=s
initial venue choice when it filed its motion to transfer venue.  See Hart, 917 S.W.2d at 781.  In that motion to transfer venue, State and
County specifically denied all venue facts alleged by Garza, and themselves
alleged that

[a]ll of the actions of
State and County, including its purported breach of a contract and alleged misrepresentations,
took place outside of Starr County, Texas. 
Specifically, all of the actions and conduct of State and County took
place from its principal and only office in the State of Texas in Tarrant
County.

 








Once
State and County properly raised the issue of venue, Garza then bore the burden
of proving that venue was maintainable in Starr County.  See Wilson, 886 S.W.2d at 261.  But rather than meeting her burden by
offering prima facie proof that venue was proper in Starr County, Garza did not
file a response to State and County=s motion
to transfer venue before the hearing on the motion.  Instead, Garza amended her petition seven
days prior to that hearing, adding Jose Mascorro as a defendant and alleging
that venue was proper because he was a resident of Starr County.  But adding Jose Mascorro as a defendant did
not meet Garza=s burden of offering prima facie
evidence that venue was proper in Starr County because Jose Mascorro was not a
proper party to Garza=s fraud claims against State and
County.[7]  See, e.g., Acker v. Denton Publ=g Co., 937
S.W.2d 111, 117 (Tex. App.CFort
Worth 1996, no writ) (holding that prima facie evidence not established through
venue allegations against defendant who is not a proper party).

Garza
did, however, file a response to State and County=s motion
to transfer three days after the trial court=s
hearing on the motion.  In that response,
Garza did not specifically deny any of the venue facts alleged in State and
County=s motion
to transfer venue.  Rather, Garza
asserted that venue was proper in Starr County because Jose Mascorro was a
resident thereof and that her Acause of
action for fraud and misrepresentation did not arise until [State and County]
misrepresented that they would pay policy limits . . . on [Jose Mascorro=s]
automobile insurance policy.@  Because Garza did not specifically deny the
venue facts alleged in State and County=s motion
to transfer venue, we take those facts as true. 
See Tex. R. Civ. P.
87(3)(a).  

After
reviewing the entire record in the light most favorable to the venue ruling,
including all summary judgment evidence subsequently produced, we hold that
there is probative evidence supporting the trial court=s
transfer of venue to Tarrant County because there is probative evidence
demonstrating that a substantial part of the events or omissions giving rise to
the fraud claim occurred in Tarrant County. 
See Chiriboga, 96 S.W.3d at 677. 
Accordingly, we overrule Garza=s first
issue.








III.  Summary
Judgment Analysis

In her
second issue, Garza contends that the trial court erred by granting State and
County=s motion
for summary judgment because there was evidence raising genuine issues of
material fact on the elements of her fraud claim.  Under that claim, Garza had the burden to
prove that (1) State and County made a material misrepresentation, (2) the
misrepresentation was false, (3) it was false at the time it was made, (4)
State and County knew it was false or made the misrepresentation recklessly
without any knowledge of its truth or falsity, (5) the misrepresentation was
made with the intention that it be acted upon by Garza, (6) Garza did act in
reliance, and (7) Garza was injured as a result of that reliance.  See Shannon v. Law-Yone, 950 S.W.2d
429, 433 (Tex. App.CFort Worth 1997, writ denied).








State
and County argues that it conclusively negated the sixth, justifiable reliance
element of Garza=s fraud claim by proving Garza
executed the settlement agreement.  A
party may waive subsequent fraud claims through a settlement agreement.  See, e.g., Schlumberger Tech. Corp. v.
Swanson, 959 S.W.2d 171, 181 (Tex. 1997) (holding that release provision
disclaiming reliance on other party's representations conclusively negated
element of fraudulent inducement claim); Atl. Lloyds Ins. Co. v. Butler,
137 S.W.3d 199, 218 (Tex. App.CHouston
[1st Dist.] 2004, pet. denied) (same). 
We must give effect to such waivers because "[p]arties should be
able to bargain for and execute a release barring all further
dispute."  Schlumberger, 959
S.W.2d at 179.  But not all
agreements are binding.  Id. at
181.  We must look to the agreement
itself and the circumstances surrounding its formation to properly determine
whether the waiver is binding.  See
id.; Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940
S.W.2d 587, 591 (Tex. 1996).  We look to
several factors in making such determinations, including whether both parties
were represented by counsel, whether the parties negotiated and dealt with each
other at arm's length, and whether the parties were knowledgeable and
sophisticated.  See Schlumberger,
959 S.W.2d at 180.








Garza
contends that this case differs from Schlumberger because the
circumstances surrounding the formation of the settlement agreement here differ
from the circumstances surrounding the formation of the release at issue in Schlumberger.  In Schlumberger, both parties were
represented by counsel, negotiated for approximately thirteen months,
corresponded primarily through their attorneys, and had a vast array of
knowledge and experience in diamond mining. 
Id. at 173-74.  At the
conclusion of their negotiations, the parties executed a release, which stated
that the plaintiffs were not "relying upon any statement or representation
of any agent of the parties being released hereby."  Id. at 180.  The court held that "a release that
clearly expresses the parties' intent to waive fraudulent inducement claims, or
one that disclaims reliance on representations about specific matters in
dispute, can preclude a claim of fraudulent inducement."  Id. at 181.

Garza is
correct in that a distinvction may be drawn between the facts here and those in
Schlumberger based on the difference in knowledge and sophistication
between State and CountyCan insurance company dealing
with insurance claims on a daily basisCand
GarzaCan
insured who arguably had less experience with insurance claims.  But Garza was represented by counsel, and the
other facts here are closely analogous to those in Schlumberger.
Wellington and Underwriters were likewise both represented by one or more
attorneys at all times.  Garza, through
her attorney, corresponded with both Wellington and Underwriters for
approximately ten months prior to signing the settlement agreement.  And like the plaintiff in Schlumberger,
after several months of correspondence with adjusters and attorneys on both the
Wellington and Underwriters claims, Garza entered into a settlement agreement
that "ACQUIT[ED], RELEASE[ED], and FOREVER DISCHARGE[D] . . . State and
County . . . from any and all claims . . . including but not limited to . . .
unfair settlement practices, deceptive trade practices, and all other claims of
any nature whatsoever."  








But most
importantly, the settlement agreement also contained a provision disclaiming
reliance on any representations made by Wellington, Underwriters, or State and
County.  That provision read,

The undersigned
acknowledge and represent that they have relied upon the advice of their
attorneys, who are the attorneys of their own choice, that they have read the
terms of this Release and Indemnity Agreement, that those terms have been
completely explained to them by their attorneys, and that those terms are fully
understood and voluntarily accepted by each of the Parties.  The undersigned further state that they do
not rely and have not relied upon any representation or statement made by any
of the Released Parties or any of their officers, agents, representatives, or
attorneys with regard to the terms of this Release and Indemnity Agreement, any
facts pertaining to, involved in or relating to this controversy, or any rights
or asserted rights they may have, and they hereby assume the risk of any
mistake of fact in connection with the true facts involved in said controversy
or with regard to any facts which are now unknown to them relating thereto.

. . . The undersigned
also represent that they are relying solely on their own advice and judgment
and that of their attorneys and they are not relying on any other person or
entity for explanation or consequences of this Release and Indemnity Agreement.

 

State
and County forwarded the proposed settlement agreement containing this language
to Garza's attorney.  In his deposition,
Garza's attorney testified that after he received a copy of the settlement
agreement, he reviewed it, discussed it with Garza, had Garza sign the release,
and faxed the signed version back to State and County=s
attorney approximately fourteen days after receiving it.  








Taking
as true all evidence favorable to Garza, the nonmovant, and indulging every
reasonable inference and resolving any doubts in her favor, we hold that State
and County was entitled to summary judgment because it conclusively negated the
justifiable reliance element of Garza's fraud claim.  See IHS Cedars Treatment Ctr. of Desoto,
Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  State and County conclusively established,
through the settlement agreement, that Garza did not rely on any alleged
fraudulent misrepresentation made by State and County in executing the
settlement agreement.  See Schlumberger,
959 S.W.2d at 181; Atl. Lloyds Ins. Co., 137 S.W.3d at 218.  

Although
State and County filed both traditional and no-evidence motions for summary
judgment and the trial court=s order
granting summary judgment did not reflect whether it granted the traditional or
no-evidence summary judgment, we can affirm the summary judgment if any theory
presented to the trial court and preserved for appellate review is meritorious.  See Provident Life & Accident Ins. Co.
v. Knott, 128 S.W.3d 211, 215 (Tex. 2003). 
We therefore affirm the trial court=s grant
of summary judgment on State and County=s
traditional summary judgment motion and need not address arguments on its
no-evidence motion.  See Tex. R. App. P. 42.1.  We overrule Garza's second issue.








IV.  Conclusion

Because
there is probative evidence supporting the trial court=s
transfer of venue to Tarrant County, we overrule Garza's first issue.  See Chiriboga, 96 S.W.3d at 677.  Because the settlement agreement conclusively
established that Garza did not rely on any representations made by State and
County in entering into that agreement, summary judgment was proper and we
overrule Garza's second issue.  Having
overruled Garza's issues, we affirm the trial court's judgment.

 

        SUE WALKER

        JUSTICE

 

PANEL B: HOLMAN, GARDNER
and WALKER, JJ.

 

DELIVERED: April 19, 2007











[1]See Tex. R. App. P. 47.4.





[2]Garza did sign and return
the proposed release sent by Underwriters, but she first modified it without
the approval or consent of Underwriters. 
Underwriters apparently did not accept Garza=s modifications.





[3]The record demonstrates,
however, that only State and County=s corporate representative knew that this was to
be a comprehensive release.  In his
deposition, the attorney retained by State and County to draft and execute that
release testified that he understood that the release was solely on behalf of
the Wellington claim. 





[4]In his deposition, Garza=s attorney testified that
when he took the check to Garza to secure her endorsement, he advised her that
it was a settlement check for the Wellington policy. 





[5]Rule 87(2)(a) refers to
section 15.001 as the "General Rule" regarding venue; however, that
section was renumbered as section 15.002 in 1995.  Tex.
Civ. Prac. & Rem. Code Ann. ' 15.001 historical note (Vernon 2002) (Act of May
8, 1995, 74th Leg., R.S., ch. 138, 1, 1995 Tex. Gen. Laws 978, 979).





[6]Although Garza also
asserted a breach of contract claim, she later dropped that claim and pursued
only her fraud claim.





[7]Garza later nonsuited
Jose Mascorro.