**Affirmed and Opinion Filed January 17, 2023**



In The
### Court of Appeals
### Fifth District of Texas at Dallas

_____

**No. 05-22-00916-CV**
_____

**DEERE & COMPANY, Appellant**
**V.**
**FRANCISCO BERNAL, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF GILBERT BERNAL, DECEASED, MARIA BERNAL, LOURDES BERNAL, AND JASENTHA BERNAL, Appellees**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-15383**

## MEMORANDUM OPINION

Before Justices Pedersen, III, Goldstein, and Smith
Opinion by Justice Pedersen, III

This interlocutory appeal arises from the trial court's order denying appellant's motion to transfer venue from Dallas County, Texas. Because we conclude appellees met their burden to establish appellant maintained a principal office in Dallas County, we affirm the trial court's order.

Appellant Deere & Co. ("Deere") designs, manufactures, and markets products, including tractors and rotary cutters. Its corporate headquarters is situated in Moline, Illinois. It has a 230,000 square-foot regional distribution center situated in Dallas County, Texas. The regional distribution center distributes parts to Deere

dealers in several states. The manager of the regional distribution center supervises more than fifty-five employees, including several supervisors. The manager of the regional distribution center does not have a supervisor situated in Texas.

In November 2019, Gilbert Bernal (Bernal) was mowing beside Highway 591 in Comanche County, Texas. Deere manufactured the tractor and large rotary cutter Bernal operated. Bernal fell from the tractor and onto the ground. The tractor and the large rotary cutter it towed continued to move in a circular pattern and ran over Bernal, who died from his injuries.

Francisco Bernal, Gilbert Bernal's father, sued Deere and Bernal's employer, Square G., Inc., in Dallas County, Texas, individually and in his capacity as representative of Gilbert Bernal's estate. Other plaintiffs include Gilbert Bernal's mother, Maria Bernal, and his children Lourdes Bernal and Jasentha Bernal.[1] They alleged Deere was strictly liable; negligent; and grossly negligent. They alleged Square G, Inc., Bernal's employer, was negligent and grossly negligent. They alleged damages pursuant to the common law, the Texas wrongful death statute, and Texas survival statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 71.002, 71.004, 71.021.

The Bernals' original petition alleged venue is proper in Dallas County pursuant to section 15.002(a)(3) of the Texas Civil Practice and Remedies Code

---

[1] We refer to plaintiffs collectively as "the Bernals."

"because one or more defendants have a principal office in the State in Dallas County, Texas." *See id.* § 15.002(a)(3). Plaintiffs' first amended petition specified, "Deere & Company maintains a 'principal office' in Dallas County, Texas."

Deere filed a motion to transfer venue asking the trial court to transfer this lawsuit to Lamar County, where co-defendant Square G., Inc.'s principal office is alleged to be situated, or to Comanche County, where Bernal's death is alleged to have occurred. *Id.* § 15.002(a)(1), (3).

On August 30, 2022, the trial court heard Deere's motion to transfer venue, and denied the motion in an order signed August 30, 2022.

Deere filed a notice of interlocutory appeal on September 19, 2022, pursuant to section 15.003 of the Texas Civil Practice & Remedies Code and Rule 28.1 of the Texas Rules of Appellate Procedure. *See id.* § 15.003; TEX. R. APP. P. 28.1.

Deere contends the trial court erred by denying its motion to transfer venue because Deere specifically denied the Bernals' venue facts; the Bernals did not present proper prima facie proof to support venue in Dallas County; the Bernals did not produce prima facie proof that Deere's regional distribution center in Dallas County is a "principal office" for venue purposes; and the Bernals failed to specifically deny Deere's venue facts establishing proper venue in Lamar County or Comanche County.

The Texas Civil Practice and Remedies Code provides that venue is proper:

(1) In the county in which all or a substantial part of the events of omissions giving rise to the claim occurred;

(2) In the county of defendant's residence at the time the cause of action accrued if defendant is a natural person; or

(3) In the county of the defendant's principal office in this state, if the defendant is not a natural person; or

(4) If Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

*Id*. § 15.002(a)(1)-(4).

The Bernals rely on section 15.002(a)(3) of the civil practice and remedies code to argue venue is proper in Dallas County. *See id.* § 15.002(a)(3). "Principal office" is defined as "a principal office of a corporation ... in this State in which the decision makers for the organization within this state conduct the daily affairs of the organization. The mere presence of an agency or representative does not establish a principal office." *Id.* § 15.001(a).

A corporation may have more than one principal office in this state. *See In re Mo. Pac. R.R., Co.*, 998 S.W.2d 212, 217 (Tex. 1999) (orig. proceeding). However, even though "a principal office" suggests there can be more than one office, the word "principal" indicates some sort of primacy. *See id.* To establish venue based on a principal office, the Bernals must show the employees in the county where the lawsuit was filed (1) are "decision makers" for the company, and (2) have "substantially equal responsibility and authority" relative to other company officials within the state. *See Union Pac. R.R., Co. v. Stouffer*, 420

–4–

S.W.3d 233, 240 (Tex. App.—Dallas 2013 pet. dism'd) (citing *In re Mo. Pac. R.R., Co.* at 217, 220). "Decision makers" who conduct the daily affairs are different kinds of officials than agents or representatives, and "daily affairs" does not mean relatively common, low-level management decisions. *Id.* at 240 (citing *In re Mo. Pac. R.R., Co.* at 217).

Generally, the plaintiff chooses the venue of the case, and the plaintiff's choice of venue cannot be disturbed if the suit is initially filed in a county of proper venue. *See Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260-61 (Tex. 1994). Once the defendant specifically challenges the plaintiff's choice of venue, the plaintiff has the burden to present prima facie proof that venue is proper in the county of suit. *See* TEX. R. CIV. P. 87(3)(a); *Stouffer*, 420 S.W.3d at 239. A plaintiff satisfies this burden "when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." TEX. R. CIV. P. 87(3)(a); *Roach v. Jackson*, No. 05-20-00762-CV, 2020 WL 7258061, at *3 (Tex. App.—Dallas Dec. 10, 2020, pet. denied) (mem. op.). This prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *See Ford Motor Co. v. Johnson*, 473 S.W.3d 925, 928 (Tex. App.—Dallas 2015, pet. denied) (citing *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993)). But if the plaintiff fails to discharge its burden, the right to choose a proper venue passes to the defendant, who must then prove that venue is proper in the defendant's chosen

county. *See In re Mo. Pac. R.R., Co.*, 998 S.W.2d at 216; *Ford Motor Co.*, 473 S.W.3d at 928.

In an interlocutory appeal of a trial court's ruling under section 15.003, the appellate court must "determine whether the trial court's order is proper based on an independent determination from the record and not under either an abuse of discretion or substantial evidence standard." TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(C)(1); *Roach*, 2020 WL 7258061, at \*3. Accordingly, our review is de novo. *See Galindo v. Garner*, No. 05-19-00061-CV, 2019 WL 2098689, at \*3 (Tex. App.—Dallas May 14, 2019, no pet.) (mem. op.). In conducting this review, we must consider the entire record, including any evidence presented at the hearing. *Id.*; *Roach*, 2020 WL 7258061, at \*3.

We first address whether Deere specifically denied the Bernal's alleged venue facts. *See* TEX. R. CIV. P. 87(3)(a); *Stouffer*, 420 S.W.3d at 239. In the trial court, the Bernals argued that Deere did not specifically deny their venue allegations.

On January 10, 2022, Deere filed a consolidated pleading that included a motion to transfer venue, which referenced the Bernal's venue allegations and stated:

> Deere denies these statements; denies Deere or any other defendant has principal office in Dallas County; denies Deere or any other defendant had principal office in Dallas County at the time the incident occurred; denies substantial part of the events or omissions giving rise to the claim occurred in Dallas County; and denies

plaintiffs have pleaded valid basis for maintaining venue in Dallas County. Plaintiffs have not met "the burden to present prima facie proof" that venue is proper in Dallas County. *See In re Mo. Pac. RR. Co.*, 998 S.W.2d 212, 216 (Tex. 1999) (orig. proceeding).

Deere requested the trial court to transfer the case to Lamar County or, in the alternative, to Comanche County.

Deere filed an amended motion to transfer venue on March 2, 2022, seeking substantially the same relief sought in its original motion to transfer venue. The amended motion incorporated the affidavit of Troy Schick, a consultant and former Deere employee. His affidavit stated, among other things, that Deere did not have a principal office in Dallas County or in Texas that conducts the daily affairs of Deere within Texas. Schick averred there are no individual decision makers in Texas who have authority to direct Deere's business in Texas or otherwise.[2]

The Bernals filed a verified first amended petition on April 14, 2022. The Bernals alleged Deere had a principal office in Dallas County. On August 1, 2022, the Bernals filed a verified response to Deere's motion to transfer venue. The Bernals supported their verified response with three exhibits: excerpts from Schick's deposition, the affidavit of Peter J. Sullivan,[3] and the Bernal's verified first amended petition.

---

[2] The amended motion also incorporated the affidavit of Brenda Gibson, an employee of Square G., Inc. Her affidavit stated Square G., Inc.'s principal office was in Lamar County.

[3] Deere objects here to the "Affidavit of Peter J. Sullivan, with Exhibits and CV." The Bernals respond, "The Court does not need to address these issues because the record evidence on which the

On August 23, 2022, Deere filed a consolidated pleading that included a denial of the Bernals' venue facts. Deere continued to allege that it did not have a principal office in Dallas County or in Texas at the time of Mr. Bernal's death. Also on August 23, 2022, Deere filed a reply in support of its amended motion to transfer venue. In it, Deere denied the Bernals' alleged venue facts. Deere argued the Bernals failed to establish that (1) the Dallas warehouse is a principal office of Deere, (2) the warehouse manager is a decision maker who conducts Deere's day-to-day operations, and (3) employees of the Dallas warehouse have equal or superior responsibility or authority compared to other Deere employees in Texas. Deere relied on the affidavit and deposition testimony of Schick.

On August 30, 2022, the Bernals filed a sur-reply to Deere's amended motion to transfer venue. The sur-reply cited the deposition testimony of Schick. The Bernals argued, in part, that Deere failed to specifically deny "all" of their alleged venue facts but "only some of the venue facts, which is insufficient." Consequently, they argued, Deere's motion to transfer venue "cannot be heard and must be denied outright . . . ." They cited to Rule 87(3)(a) of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 87(3). Rule 87(3)(a) provides, in part,

> All venue facts, when properly pleaded, shall be taken as true unless specifically denied by the adverse party. When a venue fact is

Plaintiffs rely in this Brief is (1) Schick's testimony and affidavits and (2) a screenshot of a map on John Deere's website, which Schick did not dispute came from John Deere."

specifically denied, the party pleading the venue fact must make prima facie proof of that venue fact . . . .

*Id.* 87(3)(a).

Case law does not support the Bernals' argument that Rule 87(3)(a) required Deere to specifically deny all its venue allegations. Rather, "If the defendant specifically denies *any* of the venue facts pleaded by the plaintiff, the plaintiff must make prima facie proof of *the venue facts(s) denied.*" *See State v. Life Partners, Inc.*, 243 S.W.3d 236, 239 (Tex. App.—Waco 2007, pet. denied) (per curiam) (emphases added); *In re Stroud Oil Props., Inc.*, 110 S.W.3d 18, 22-23 (Tex. App.—Waco 2002, orig. proceeding) (emphasis added). "If the defendant fails to specifically deny *any* of the pleaded venue facts, they are taken as true." *In re Stroud Oil Props., Inc.*, 110 S.W.3d at 23 (emphasis added). The Bernals offer no contrary authority.

Based on the venue pleadings and evidence summarized above, we conclude Deere specifically denied the Bernals' venue allegations. *See id.*

Consequently, it became the Bernals' burden to establish a prima facie case that venue is proper in Dallas County because Deere maintains a principal office there. *See* TEX. R. CIV. P. 87(3)(a); *Stouffer*, 420 S.W.3d at 239. We first consider whether the Bernals established the Dallas regional distribution center had a decision maker who conducted the "daily affairs" of Deere and who ran the company from day to day. *See In re Mo. Pac. R.R. Co.*, 998 S.W.2d at 220.

Deere's amended motion incorporated an affidavit from Troy Schick, a tractor-engineering consultant and former Deere employee. Schick's affidavit describes Deere's structure and operations in Texas. Schick avers Deere does not maintain a principal office in the State of Texas, and does not establish a principal office in each state where its products are sold. Deere's operations are centralized and controlled from its headquarters located in Moline, Illinois. The decision makers with responsibility for day-to-day operations of Deere throughout the United States work at Deere's headquarters in Moline, Illinois. All decisions affecting Deere as an organization in Texas or otherwise—relating to design, manufacture, sale, or distribution of products—are made outside of Texas. Contracts are negotiated, policies and procedures are prepared, and financial strategies are formulated at Deere's headquarters in Moline.

Schick's affidavit stated there is no district, regional, or principal office of Deere situated in Dallas County—or in any other Texas County—that conducts the daily affairs of Deere within the State of Texas or otherwise. There are no individual decision makers within the State of Texas who have authority to direct Deere's business within the State of Texas or otherwise.

The affidavit states that as of November 22, 2019, Deere's presence in Dallas County consisted of the ownership and operation of a parts warehouse and dealer training center. The warehouse is one of several regional warehouses distributing parts to dealers in a specific region. About fifty-five employees

worked at the warehouse. The employees include a depot manager who manages the warehouse; an office administrator; three supervisors who run the warehouse floor; warehouse workers; an inventory analyst who handles restocking parts; two shipping coordinators who manage inbound and outbound parts; truck drivers; and maintenance employees. The manager of the parts warehouse reports to Deere in Illinois. The dealer training center, which consisted of systems training for dealer technicians, closed in October 2021. The parts warehouse is Deere's only physical presence in Dallas County.

The affidavit further stated that the regional distribution center does not receive orders directly from dealers, or deal directly with individual consumers. Dealers place orders on an online application, and the application information is transmitted to one of several parts distribution centers based on parts inventory and other factors. Parts orders from dealers in Texas are often fulfilled by parts centers outside of Texas and not necessarily by the parts warehouse in Dallas County.

According to the affidavit, no one at the Dallas parts warehouse or the dealer training facility participated or participates in day-to-day decisions with respect to Deere's operations in Texas or elsewhere. No Dallas County Deere employee is a decision-making official. The sole function of the Dallas warehouse is to receive and distribute orders to dealers based on information provided online by the dealer and transmitted to the Dallas regional parts center. None of the warehouse employees control, manage, or have authority over any other Deere distribution

–11–

warehouse, office, or other facility in Texas or elsewhere. No decisions regarding any of the daily operations of Deere's business—including the design, manufacture, testing, marketing, or sale of Deere products—are made in the Dallas parts warehouse, the former Dallas dealer training facility, or any other facility in Texas.

Last, Schick's affidavit states that all other Deere employees in Texas—including sales representatives and territory customer support—operate throughout the State of Texas, and their presence in Dallas County is no more significant than their presence in any other Texas county. All Deere's agents and representatives in Texas report to their department heads who work outside of Texas.

Deere and the Bernals also relied on Schick's deposition testimony. His deposition testimony generally overlapped his affidavit testimony although it supplemented it. He testified Deere initially receives parts and components at its North American parts distribution center in Moline, Illinois. The parts are received, inventoried, and stored there. The North American parts distribution center ships parts to the Dallas regional distribution center by truck. When a regional distribution center receives shipments from the main warehouse in Moline, shipping coordinators and inventory personnel at the Dallas regional distribution center inventory the part(s) and place them in bin or rack. The dealers order part(s) from Deere electronically. The dealers' orders are received by Deere in Moline. Deere decides which regional distribution center will fill the order and

electronically notifies the regional distribution center that has the part(s) in stock. Workers at the Dallas regional distribution center receive an electronic file that identifies the part(s), the quantity, the location of the part(s) in the regional distribution center, and where the part(s) needs to be shipped. Employees at the Dallas regional distribution center subsequently locate the part(s) and provide it to a local carrier who then ships the parts(s) to particular Deere dealers.

Schick testified that the manager of the Dallas regional distribution center does not make product-distribution decisions. The depot manager is "a link" in a larger process. The job of the manager of the Dallas regional distribution center is to make sure the orders that come in from Illinois are executed at the Dallas regional distribution center. Schick said, "I couldn't call it coordinating. He's given a job to do and that's what he does."

However, Schick testified the manager of the Dallas regional distribution center manages the center's employees and the warehouse facilities. He does not have a supervisor located in Texas. He is the highest-level employee at the regional distribution center. His job is to operate the regional distribution center. The employees report to him. He is responsible for daily operations of receiving orders, sending them out, and running the regional distribution center. He is responsible for managing the physical facility, the building, and the employees. Concerning the extent of actual day-to-day decision making that takes place by decision makers in

Illinois and imposed on the manager of the Dallas regional distribution center, Schick testified:

> Q: Is anybody actually in charge of parts distribution at all at these regional locations or is it all handled remotely?
> A: It's not remote in that the decisions are handled by the higher level management but the system itself, it's it – it runs in real time through the Milan (sic) North America distribution center, so those computers are all connected and orders are pushed out. That's all handled in real time from Milan (sic).

In arguing the manager of the Dallas regional distribution center was not a decision maker, Deere relies, in part, on this Court's opinion in *Roach v. Jackson*. 2020 WL 7258061, at *1. In *Roach*, the defendant argued it had no principal office in Texas. *Id.* at *5. The defendant maintained that all its "decision makers" were in its Virginia corporate headquarters. *Id*. It contended that even its top employees in Dallas lacked authority or discretion to be "decision makers" and instead performed only routine, lower-level tasks that could not be fairly categorized as the company's "daily affairs." *Id.*

Deere makes several arguments in support of its claim that the manager of the Dallas regional distribution center is not a "decision maker" for venue purposes. First, Deere argues that the manager performs several low-level management duties identified in *Roach*, such as ensuring that payroll is correct and on time, maintaining the safety and reliability of equipment, implementing training programs, enforcing compliance with company standards, managing shop operations, and similar responsibilities. *See id.* at *6.

However, Schick testified the manager of the Dallas regional distribution center supervises more than fifty-five Deere employees, including supervisors and others, is responsible for a 230,000 square foot facility, and serves Deere dealerships and their customers in several states. Schick's affidavit and deposition testimony, described above, identified numerous areas—other than the routing of particular parts—in which the manager of the regional distribution center is the authoritative figure in managing the regional facility and its layers and departments of employees. Schick did not identify a decision maker of higher authority in Texas who made day-to-day decisions in running the company, the employees, and the facility than the manager of the Dallas regional distribution center.

In *Roach*, the defendant's second-highest-ranking employee in Texas directed managers and activities within various terminals in the district. *Id.* Notably, he did so "at the direction of" defendant's corporate office in Virginia and "in accordance with its 'guidelines.'" *Id.* The employee in *Roach* supervised defendant's activities, including discussing the number of local drivers to be used on a daily basis to pick up and deliver freight, controlling cost, and matching drivers to the workload. *Id.* This Court concluded in *Roach* that these activities were different from "low-level management decisions." *Id.*

A second decision maker in *Roach* directed the district operations managers, made decisions for defendant on a day-to-day basis according to guidelines "given to him by the corporate office" in Virginia, coordinated and directed defendant's

activities within Texas '[a]t the direction of the corporate office" in Virginia, met corporate goals of efficiency and productivity and things of that sort, matching people to workloads pursuant to goals given by the corporate office. *Id.* at *6. The facts in *Roach* closely resemble those here.

Second, Deere argues that the day-to-day responsibilities of the decision makers in *Roach*, unlike the manager of the regional distribution center here, "reached far beyond" the Dallas County facility where they worked. Deere fails to cite to an opinion that requires a decision maker to manage personnel "far beyond" his or her office. Moreover, *Roach* concerned a defendant transportation company that served three states, was divided into six regions, and was further divided into twelve districts. *See Roach*, 2020 WL 7258061, at * 6.

Third, Deere argues that the manager of the regional distribution center is not "necessarily" a decision maker simply because he is the highest-ranking employee at that location and is in charge of operations and employees there. Deere's argument fails in light of Schick's testimony concerning the authority of the manager of the regional distribution center.

We see no meaningful distinction from the facts described in *Roach* that Deere's system of routing certain parts to certain destinations preempts any higher-level day-to-day decision making by the manager of the Dallas regional distribution center. Schick's affidavit and deposition testimony, described above, identified numerous areas—other than the routing of particular parts—in which the

–16–

manager of the regional distribution center is the authoritative figure in managing the regional facility and its layers and departments of employees. Schick did not identify a decision maker of higher authority in Texas who made day-to-day decisions in running the company, the employees, and the facility than the manager of the Dallas regional distribution center.

We conclude the manager of the Dallas regional distribution center was a decision maker for purposes of establishing proper venue in Dallas County as a principal office of Deere. Here, as in *Roach*, C-Suite decisions were not apparent, and some actions in Texas were guided from out of state. *Id.* at *6. We must follow materially indistinguishable decisions of earlier panels of this Court unless a higher authority has superseded that prior decision. *See Mitschke v. Borromeo*, 645 S.W.3d 251, 256 (Tex. 2022) ("Typically, a higher authority includes a decision from the U.S. Supreme Court, the Texas Supreme Court, or the Texas Court of Criminal Appeals; an en banc decision of the court of appeals itself; or an applicable legislative or constitutional provision.") (footnotes omitted). *Roach* has not been demonstrated to be materially distinguishable from this case, and we follow our precedent.

We next consider whether the Dallas regional distribution center was "clearly" subordinate to and "controlled by" another Deere office in Texas. *In re Mo. Pac. R.R., Co.*, 998 S.W.2d at 220; *Roach*, 2020 WL 7258061, at *7. In his affidavit, Schick averred there is no district, regional, or principal office of Deere

–17–

situated in Dallas County—or in any other Texas County—that conducts the daily affairs of Deere within the State of Texas or otherwise. He testified there are no individual decision makers within the State of Texas who have authority to direct Deere's business within the State of Texas or otherwise. We conclude the Dallas regional distribution center was not "clearly" subordinate to and "controlled by" another Deere office in Texas. *See In re Mo. Pac. R.R., Co.*, 998 S.W.2d at 220; *Roach*, 2020 WL 7258061, at *7.

We conclude the Bernals established a prima facia case that venue is proper in Dallas County pursuant to section 15.002(a)(3) of the Texas Civil Practice & Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.002(a)(3); *In re Mo. Pac. R.R.*, Co., 998 S.W.2d at 217-21.

Because the Bernals established proper venue in Dallas County under section 15.002(a)(3) of the Texas Civil Practice and Remedies Code, we do not reach Deere's contention that venue should be transferred to Comanche County or to Lamar County.

We affirm the trial court's order denying Deere's motion to transfer venue.

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE

220916F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

DEERE & COMPANY, Appellant

No. 05-22-00916-CV     V.

FRANCISCO BERNAL,
INDIVIDUALLY AND AS
REPRESENTATIVE OF THE
ESTATE OF GILBERT BERNAL,
DECEASED, MARIA BERNAL,
LOURDES BERNAL, AND
JASENTHA BERNAL, Appellees

On Appeal from the 95th District
Court, Dallas County, Texas
Trial Court Cause No. DC-21-15383.
Opinion delivered by Justice
Pedersen, III. Justices Goldstein and
Smith participating.

In accordance with this Court's opinion of this date, the order of the trial court denying appellant Deere & Company's motion to transfer venue is **AFFIRMED**.

It is **ORDERED** that appellees FRANCISCO BERNAL, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF GILBERT BERNAL, DECEASED, MARIA BERNAL, LOURDES BERNAL, AND JASENTHA BERNAL recover their costs of this appeal from appellant DEERE & COMPANY.

Judgment entered this 17th day of January, 2023.